**UNITED STATES of America, Appellee,**

**v.**

**Sylvester Patrick DuBOIS, Appellant.**

**No. 80–1889.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1981.

Decided April 9, 1981.

Rehearing and Rehearing En Banc
Denied June 8, 1981.

Mark V. Larson, Marilyn Page (law student), Grand Forks, N. D., for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before LAY, Chief Judge, STEPHENSON and ARNOLD, Circuit Judges.

LAY, Chief Judge.

The dispositive issue in this appeal is the sufficiency of the evidence to prove that the defendant was intoxicated when a motor vehicle that he was driving struck and killed a pedestrian. The defendant, Sylvester Patrick DuBois, a 40 year old Indian male, was convicted under 18 U.S.C. § 1153 for involuntary manslaughter.[1] We find that the government failed to prove by competent evidence that DuBois was driving while under the influence of intoxicating liquor, an element of the offense, and we vacate the conviction.

The accident occurred at approximately 9:50 p. m. on May 9, 1980 on the Turtle Mountain Indian Reservation near Belcourt, North Dakota. At the time of the accident DuBois was accompanied by Gerald Decoteau, age 12 years, and Leo Crissler, age 14 years. DuBois and the two boys were going to Leo's mother's former home to bring a 25-gallon can of water to her new house. Before leaving on the errand DuBois was observed drinking one can of beer. After passing an oncoming vehicle the DuBois vehicle struck and killed a pedestrian, Alexander Bercier, who was walking with his back to the DuBois vehicle. The evidence was conflicting as to whether Bercier was walking on the highway or was off the roadway. An autopsy showed Bercier had ethyl alcohol in his blood in a concentration of .21 per cent by weight.

After the accident DuBois did not stop his vehicle. He proceeded to Rolla, North Dakota where he purchased a six-pack or 12-pack of beer. DuBois and the two boys then went to Mrs. Crissler's old house, retrieved the water and went to the new house. The boys and Mrs. Crissler indicated DuBois helped carry the heavy container of water without spilling but a few drops. Then DuBois and the two boys returned to Mrs. Crissler's former home and removed an antenna wire from the side of the house, and went to DuBois' house to pick up an antenna. They went back to Mrs. Crissler's new house shortly after 11:00 p. m. and the boys went to bed. The boys observed DuBois drink from two to four additional cans of beer in the period after the accident. DuBois remained with Mrs. Crissler until 11:40 and Mrs. Crissler said DuBois drank one can of beer in her presence. DuBois was arrested in his auto at 11:51 and at that time no beer was found in his vehicle. The breathalyzer test was administered at 12:29 a. m., and showed DuBois' blood alcohol level at that time was .22 per cent.

Margaret Pearson, a forensic chemist at the North Dakota State Toxicology Laboratory testified that a person showing over .1 per cent blood alcohol concentration is presumed to be an impaired driver.[2] Ms. Pearson attempted to estimate DuBois' blood alcohol level at the time of the accident. She reasoned that the rate of burn-off of blood alcohol is .015 per cent per hour. She then made the assumption that DuBois had "an average" of three beers after the accident, and that this consumption offset the burn-off. Thus, she concluded that the .22 per cent at the time of the test was also the approximate blood alcohol percentage at the time of the accident.[3]

Other than the Pearson testimony, there was little or no evidence of DuBois' intoxication at the time of the accident. It is

---

1. 18 U.S.C. § 1112 defines involuntary manslaughter as: "the unlawful killing of a human being without malice.... [i]n the commission of an unlawful act not amounting to a felony...."

2. Under North Dakota law evidence of ten hundredths of one per cent or more by weight of alcohol in the blood supports a presumption that an individual is under the influence of intoxicating liquor. N.D.Cent.Code 39–20–07.

3. Before trial the defendant moved to suppress the results of the test on the ground that the test results were not probative to the issue of

intoxication at the time of the incident, and alternatively if probative, they were outweighed by the prejudicial effect of the evidence. See Fed.R.Evid. 403. The trial court found that the test was probative since the defendant did not deny he was drinking at the time of the accident and because the prosecution indicated that persons in the car would testify as to DuBois' intoxication. On this basis the court concluded the issue was one of weight to be given the test results rather than admissibility.

undisputed that he drank one beer before the accident, but that is not enough to reach a level of intoxication. While it is possible he could have had more to drink before he came to Mrs. Crissler's home, there was no testimony to that effect and testimony about his conduct up to the time of the accident and thereafter did not suggest that he was under the influence of intoxicating liquor. In fact, the parents of the boys testified that they saw DuBois and did not think he was intoxicated, and that they would not have sent their sons with him if he was. Furthermore, the facts surrounding the unfortunate accident, including DuBois' leaving the scene, do not by themselves justify a finding that DuBois was intoxicated at that time. *Cf. United States v. Demontigney*, 286 F.Supp. 568, 570 (D.N.D.1968).

■ In evaluating the sufficiency of the evidence, we emphasize that this was a criminal trial. The Government had to prove the defendant's guilt beyond a reasonable doubt.[4] An essential element of involuntary manslaughter was that the defendant struck and killed Bercier while in the commission of an unlawful act not amounting to a felony, to-wit, the operation of a motor vehicle while under the influence of intoxicating liquor, N.D.Cent.Code § 39–08–01. Even when viewed in the light most favorable to the Government, the only possible proof of DuBois' intoxication was the expert's extrapolation based on the test taken two and one-half hours after the accident and after the undisputed consumption of an unknown amount of beer.

■ Delays between an accident and a blood test are common, as it is often necessary to take the defendant to a police station or medical facility. If a defendant is placed in custody immediately after an accident and remains under the control of officers or others and consumes no more alcohol before the test is given, a conviction may be based upon the test results and expert testimony estimating the blood alcohol level at the time of the accident. *See, e. g., State v. Parson*, 226 Kan. 491, 601 P.2d 680, 683 (1979); *State v. Hendrickson*, 240 N.W.2d 846, 853 (N.D.1976); *Toms v. State*, 95 Okl.Cr. 60, 239 P.2d 812, 820 (1952). *See generally* McCormick's Handbook of the Law of Evidence, § 209 at 512 (2d ed. 1972). *See also Ullman v. Overnite Transportation Co.*, 563 F.2d 152 (5th Cir. 1977) (personal injury case; no indication of intervening drinking or unsupervised period; permissible to extrapolate back, objections go to weight). *Cf. United States v. DeCoteau*, 516 F.2d 16 (8th Cir. 1975) (no indication of intervening drinking or unsupervised period). In contrast, where there is a gap between the accident and the test during which the defendant is not in custody or otherwise supervised and has consumed alcohol, evidence that he was drunk when arrested has been held insufficient to show he was drunk when the accident occurred, particularly when there was little or no evidence of intoxication or drinking at the earlier time. *See, e. g., People v. Wells*, 103 Ill.App.2d 128, 243 N.E.2d 427 (1968); *State v. Creighton*, 201 N.W.2d 471 (Iowa 1972) (and cases cited therein); *State v. Dodson*, 496 S.W.2d 272 (Mo.Ct.App.1973); *State v. Kaloustian*, 212 N.W.2d 843 (N.D.1973). *Cf. Stephens v. State*, 127 Ga.App. 416, 193 S.E.2d 870 (1972) (no indication of subsequent consumption); *Townsend v. State*, 127 Ga.App. 797, 195 S.E.2d 474 (1972) (test four hours later, but defendant denied drinking after accident); *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975) (fact finder rejected claim of intervening consumption); *State v. Neset*, 216 N.W.2d 285 (N.D. 1974) (evidence sufficient to conclude arrest occurred within thirty minutes of accident).

■ While there may be instances where an expert's estimate could account for intervening consumption and could thus serve as sufficient evidence of intoxication

---

4. On appellate review, "the verdict of the jury must be sustained if there is substantial evidence in the record to support it, taking the view of the evidence most favorable to the government." *United States v. Schmidt*, 626 F.2d 616 (8th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980). *See also United States v. Taylor*, 599 F.2d 832, 838 (8th Cir. 1979).

at the earlier time, this is not such a case. When there has been intervening consumption an accurate estimate requires knowledge of three variables: the blood alcohol level at the later time, the time elapsed since the accident, and the amount consumed in the interim. In this case, the expert did not know the amount consumed in the interim. Possibilities ranged anywhere from three to twelve beers. As a result, Ms. Pearson's conclusion that the defendant had a .22 or even a .1 per cent blood alcohol at the time of the accident is simply conjecture, and it is well established that "a jury is not justified in convicting a defendant on the basis of mere suspicion, speculation or conjecture." *United States v. Diggs*, 527 F.2d 509, 513 (8th Cir. 1975). *See also United States v. Knife*, 592 F.2d 472, 475–79 (8th Cir. 1979); *United States v. Brown*, 584 F.2d 252, 262–66 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979) (expert's testimony insufficient); *United States v. Frol*, 518 F.2d 1134, 1137–38 (8th Cir. 1975). *Cf. United States v. Massey*, 594 F.2d 676 (8th Cir. 1979) (improper use of scientific testimony regarding hair samples).

█ It is fundamental that to find that a person was driving under the influence of intoxicating liquor solely on the basis of a breathalyzer test there must be a rational connection between the test and the inference of intoxication. The intervening consumption of unknown quantities of alcoholic beverages severed any rational connection here. Because the record as a whole shows insufficient evidence of intoxication, we vacate the judgment and direct dismissal of the charge of involuntary manslaughter.

The judgment of conviction is reversed and vacated.