**Walter D. WEIR and Janet D. Weir, Plaintiffs,**

v.

**FEDERAL INSURANCE COMPANY, Defendant and Third Party Plaintiff-Appellant, Cross-Appellee,**

v.

**WHIRLPOOL CORPORATION, Third Party Defendant-Appellee, Cross-Appellant,**

**and**

**Mesa TV and Appliance, Inc., Third Party Defendant.**

**Nos. 83–2057 & 83–2080.**

United States Court of Appeals, Tenth Circuit.

Feb. 19, 1987.

Thomas H. Barrows (Theresa A. Villanueva, Barrows & Sisun, P.C., Denver, Colo., was also on the briefs) Barrows & Sisun, P.C., Denver, Colo., for appellant and cross-appellee.

Peter C. Forbes (Gregory L. Williams, Rothgerber, Appel, Powers & Johnson, Denver, Colo., was also on the briefs) Rothgerber, Appel, Powers & Johnson, Denver, Colo., for appellee and cross-appellant.

Before McKAY, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from a jury verdict awarding Federal Insurance Company (Federal) $98,207.30 in damages in its subrogation action against the Whirlpool Corporation (Whirlpool). Federal appeals from the denial of prejudgment interest by the district court. Whirlpool alleges error in the instructions to the jury, certain evidentiary rulings, and the denial of a directed verdict or judgment n.o.v. Recent decisions of the Colorado courts show that the jury was improperly instructed regarding the applicable law on misuse of a product and the elements of an implied warranty of fitness for a particular purpose. Accordingly, we reverse and remand for a new trial.

On January 13, 1977, a fire destroyed the home and rare book collection of Walter and Janet Weir. The Weirs had asked their insurance agent on the previous day to double the amount of coverage on their collection, and the agent said he would do so. The Weirs subsequently filed suit against Federal, the insurer of the rare book collection, after Federal refused to pay the Weirs the amount of the doubled insurance policy. Federal then filed a third-party complaint against Whirlpool, alleging that a defective dryer manufactured by Whirlpool had caused the fire in the Weirs' home. Whirlpool responded that the dryer was not defective and that the fire had been caused by the Weirs' negligent use of the dryer.[1]

The Weirs and Federal settled their suit before trial. Federal's subrogation action against Whirlpool proceeded to trial before a jury in the United States District Court for the District of Colorado. Federal argued at trial that Whirlpool had caused the Weirs' loss by the manufacture of a defective product, or, in the alternative, the breach of an implied warranty of fitness for a particular purpose. The jury decided for Federal on both claims.

I.

Whirlpool argues on appeal that the district judge erred in failing to instruct the jury that misuse is a defense to a products liability action. We will not consider this claim, however, if Whirlpool did not proper-

1. Mesa TV and Appliance, Inc., the seller of the dryer, was a party to this suit, but both Federal and Whirlpool entered stipulations with Mesa to dismiss their claims against Mesa with prejudice.

ly object to the jury instructions as they were given at trial.

### A.

 Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." This specific objection requirement provides the trial court with an opportunity to make proper changes to the jury instructions. *Moe v. Avions Marcel Dassault-Breguet Aviation,* 727 F.2d 917, 924 (10th Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984); *Corriz v. Naranjo,* 667 F.2d 892, 896 (10th Cir.1981), *cert. dismissed,* 458 U.S. 1123, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Rogers v. Northern Rio Arriba Elec. Coop., Inc.,* 580 F.2d 1039, 1042 (10th Cir.1978). Accordingly, we have held that "the grounds stated in [an] objection must be obvious, plain, or unmistakable." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1514 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) (citing *Corriz,* 667 F.2d at 896). The rule requires counsel " 'to make abundantly clear to the trial court the objecting party's position.' " *Id.* (quoting *Rogers,* 580 F.2d at 1042). An objection is adequate to preserve the issue on appeal if it "identified the objectionable instruction and denoted the legal grounds for the objection." *Taylor v. Denver and Rio Grande W.R.R. Co.,* 438 F.2d 351, 353 (10th Cir. 1971).

The conduct of the Weirs was central to the defense argued by Whirlpool at trial. Whirlpool asserted that the fire was caused by the Weirs' use of the dryer while it was plugged into a floor outlet immediately below a leaking faucet. Whirlpool introduced evidence to support this theory. The jury instructions proposed and ultimately given by the district judge failed to include any suggestion that the conduct of the Weirs could affect their right to recovery. Counsel for Whirlpool objected at the jury in-

struction conference to the absence of a misuse instruction:

> [W]e have stated a defense and tendered an instruction on misuse of the product based upon Mr. Ely's testimony, which went as follows: That he viewed a leak, a water leakage in the Weir home, which water leakage was splashing on the floor and getting the 220–volt plug wet. The 220–volt plug was the same plug into which the dryer which is allegedly defective was powered and plugged. Mr. Ely testified that he told both Doctor Weir and Mrs. Weir that they had better get that leak fixed because the 220–volt plug was getting wet and because there was a danger of a short circuit condition if that plug were allowed to get wet and if they continued to use the machine before fixing the leak.
>
> The evidence is uncontradicted that Mr. and Mrs. Weir did continue to use the machine. They went so far as to wrap a towel around the faucet while using the machine. Ely came back a second day and reiterated his warning and they continued to use the machine with the leaking condition.
>
> . . . .
>
> ... I think that a misuse, or assumption of the risk instruction, we tendered one to the Court, Your Honor, is appropriate here. But that's our argument.

R.Vol. VII p. 954–55. The district judge responded to this objection as follows:

> Well, since the Tenth Circuit has asked that we state our reasoning, on subjects such as this, first as to your suggestion that this is a case where misuse of product is a defense, your argument having to do with supposedly wet electrical connection is, at best, an argument asserting contributory negligence, not a defense in a Section 402(a) product liability case, nor is it a defense in a breach of implied warranty of fitness. Misuse of product does not apply. This product, a clothes dryer, was being used, if for anything, only for drying clothes, which is its purpose. This is not the case of a Coke bottle being used to pound a nail, nor is

it the case of an automobile being used as a boat, or any such misuse of product. R.Vol. VII p. 955.

■ This statement of the district judge indicates that he understood that Whirlpool's objection to the proposed instructions specifically challenged the absence of a misuse instruction. Our decisions in prior cases show that when an "objection properly calls the alleged error to the court's attention ..., the requirement of [Rule 51] is met." *Taylor*, 438 F.2d at 353. Here, Whirlpool's position on misuse was clear to the judge and he had an opportunity to make proper changes. It would be disingenuous for us to say that Whirlpool's objection to the absence of a misuse instruction was not sufficiently specific when the district judge immediately understood the nature of the objection. We therefore hold that Whirlpool's objection to the jury instructions at trial was adequate under Rule 51 to preserve its right to pursue its argument on appeal.

### B.

The Colorado Supreme Court recently clarified the definition of misuse in a products liability action in Colorado in *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986) (en banc). Because the district court in the present case did not have the benefit of *Uptain* at the time of the rulings now challenged, it erroneously concluded that misuse does not apply when the product is being used for its intended purpose.

In *Uptain*, the plaintiff was burned when her hands came in contact with a chemical cleaning compound. The defendant claimed the plaintiff had misused the product because of her failure to wear rubber gloves despite a warning on the container to avoid contact with the compound. The Colorado Supreme Court held:

> Misuse ... is a question of causation. Regardless of the defective condition, if any, of a manufacturer's product, a manufacturer will not be liable if an unforeseeable misuse of the product caused the injuries. The plaintiff argues that [the manufacturer] was not entitled to any

instruction on the defense of misuse because [the product] was being used for its intended purpose. However, the concept of misuse includes use of a product in a manner other than that which was intended as well as use for an unintended purpose.

*Id.* at 1325–26 (citations omitted).

The court further held:

> A manufacturer of a product is not legally responsible for injuries caused by a product if: (1) the product is used in a manner or for a purpose other than that which was intended and which could not reasonably have been expected; and (2) such use rather than a defect, if any, in the product caused the plaintiff's claimed injuries.

*Id.* at 1325.

■ Whirlpool presented evidence that the Weirs had plugged the dryer into an outlet located directly below a leaking faucet and that the Weirs had been warned of the possible consequences of doing so. The dryer was certainly not intended to be used in this manner and Whirlpool could not have reasonably expected that it would have been used in this way. As the *Uptain* ruling now makes clear, the district court erred in failing to give an appropriate instruction to the jury on the defense of misuse in a products liability action.

We have held that "'an error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir.1984) (quoting *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir.1983)). The jury was not instructed that the conduct of the Weirs could relieve Whirlpool from liability even if there was a defect in the product. There was evidence in the record to support Whirlpool's position. Thus the failure to give an instruction on misuse prejudiced Whirlpool by preventing the jury from considering one of Whirlpool's most substantial defenses to liability. We therefore hold that it was reversible error for the

district judge not to give an instruction on misuse of the product.

## II.

Whirlpool asserts that there is no evidence of how a particular defect in the dryer caused the fire and that, therefore, the district court erred in denying Whirlpool's motions for a directed verdict or a judgment n.o.v. Federal claims that such evidence was presented at trial, but that even if it were not the jury could infer the existence of a defect. In *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80 (Colo.Ct.App.1986), the court considered a situation in which an allegedly defective television had been completely destroyed in a fire. The defendant argued that there was no evidence that the product was defective. The court held:

> Defendant further contends that evidence showing that the TV ignited should not be sufficient to establish the inference that it was defective. However, direct proof of defect was impossible in this case because the TV was destroyed in the fire. A ruling that proof of defect is unattainable as a matter of law in circumstances such as these would effectively establish a conclusory presumption of non-liability in favor of strict product liability defendants whose products self-destruct in the process of causing injury to persons or property. We are not prepared to adopt such a view. Therefore, we hold that plaintiff's evidence was sufficient as a matter of law to create an issue of fact as to the element of defect.

*Id.* at 83 (citations omitted).

■ Whirlpool would limit *Union Ins. Co.* to situations in which there is no evidence that the product was misused. We do not agree. The inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident. Such evidence was introduced in *Union Ins. Co.* and in the cases relied upon by the Colorado court in *Union Ins. Co. See Liberty Mut. Ins. Co. v. Sears, Roebuck & Co.*, 35 Conn.Supp. 687, 689–91, 406 A.2d 1254, 1256–57 (1979); *Fain v. GTE Sylvania, Inc.*, 652 S.W.2d 163, 165 (Mo.Ct.App.1983); *Tigert v. Admiral Corp.*, 612 P.2d 1381, 1383 (Okla.Ct. App.1980). Evidence offered by the defendant that is contrary to the evidence offered by the plaintiff creates a question for the jury; it does not prevent the jury from relying upon the plaintiff's evidence and inferring a defect. "An inference need not be justified beyond all doubt and is not precluded by a mere possibility that the contrary may be true." *Fain*, 652 S.W.2d at 165 (citation omitted). *Accord* Annotation, *Strict Products Liability—Proof of Defect*, 51 A.L.R.3d 8, 15 (1973) (footnote omitted) (an inference of defectiveness may be appropriate "where there is at least some evidence offered, or present in the circumstances surrounding the event, which tends to eliminate or make improbable some other cause"), *cited in Union Ins. Co.*, 724 P.2d at 83.[2]

■ Federal introduced evidence at trial that excluded misuse as a cause of the fire. This evidence was sufficient to allow the jury to infer that the dryer was defective, and thus, that the dryer caused the fire. We therefore reject Whirlpool's argument that there was no evidence supporting the jury's conclusion that the dryer caused the fire.

## III.

Because the jury found for Federal on the alternative claims of products liability and breach of an implied warranty of fitness for a particular purpose, we must consider Whirlpool's argument that the dis-

---

**2.** The court in *Union Ins. Co.* did acknowledge that the evidence excluding other possible causes of the fire was "substantially uncontroverted." 724 P.2d at 83. Unlike Whirlpool, however, we do not read this as a holding that a defendant can prevent a jury from considering the question of causation by introducing evidence that conflicts with the plaintiff's evidence and thus creates a question of fact. A jury must be allowed to decide whether or not to infer a defect whenever the plaintiff has introduced evidence that would exclude other possible causes of the fire.

trict judge improperly instructed the jury regarding the elements of the implied warranty of fitness for a particular purpose. The district judge instructed the jury that Federal could recover on this theory if, *inter alia,* Whirlpool "impliedly warranted the dryer to be fit for the particular purpose of drying clothes." R.Vol. VIII p. 1103. Colorado law makes it clear that "drying clothes" is not the type of particular purpose of a clothes dryer that gives rise to an implied warranty.

Colorado has adopted the Uniform Commercial Code, which provides for an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Colo.Rev.Stat. §§ 4–2–314 to –315.[3] "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Colo.Rev.Stat. § 4–2–314(1). This implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." Colo.Rev.Stat. § 4–2–314(2)(c). In contrast, section 4–2–315 creates an implied warranty of fitness for a particular purpose:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose.

Colo.Rev.Stat. § 4–2–315. The statute distinguishes between an ordinary purpose giving rise to an implied warranty of merchantability and a particular purpose giving rise to an implied warranty of fitness for a particular purpose:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantabil-

ity and go to uses which are customarily made of the goods in question.

Colo.Rev.Stat. § 4–2–315 comment 2. In *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 208–09 (Colo.1984) (en banc), the court considered whether an implied warranty of fitness for a particular purpose had been created. It found that the evidence supported the conclusion that such a warranty had been created when a woman bought a Dalkon shield because she desired an especially safe method of contraception. The court was careful to distinguish between the ordinary purpose of an IUD—preventing pregnancy—and the particular purpose—especially safe contraception—that caused Palmer to select the Dalkon shield. Thus the court in *Palmer* required that the ordinary and particular purposes of a buyer in selecting a product be distinguished.

 The jury in the present case was instructed that drying clothes could serve as the particular purpose that the Weirs had in mind in selecting the clothes dryer. It is obvious, however, that drying clothes is only the ordinary purpose of a clothes dryer. A reason for purchasing a particular product beyond the ordinary reason for selecting that product must be shown in order to give rise to an implied warranty of fitness for a particular purpose. Purchasing a dryer with the purpose of drying clothes does not explain why one particular dryer was chosen, for all dryers can reasonably be assumed to be suitable for the purpose of drying clothes. Thus, the district judge erred in instructing the jury that drying clothes could be the "particular purpose" necessary to establish an implied warranty of fitness for a particular purpose. This error was prejudicial to Whirlpool because Federal had withdrawn its breach of an implied warranty of merchantability claim. We therefore hold that the erroneous instruction given by the district judge constitutes reversible error.

## IV.

 Whirlpool argues that Federal cannot recover from Whirlpool the entire

---

**3.** Federal initially brought claims under both implied warranties, but Federal withdrew the

breach of an implied warranty of merchantability claim during trial.

$98,207.30 Federal paid to the Weirs in settlement of their claim under the policy. Whirlpool contends that Federal was obligated to pay only half that amount and thus the additional amount was paid voluntarily. Colorado recognizes the principle that an insurer cannot recover from a wrongdoer through subrogation to an injured party's claim if the insurer paid the injured party "voluntarily." *Weaver v. New Jersey Fidelity & Plate Glass Ins. Co.,* 56 Colo. 112, 115, 136 P. 1180, 1181 (1913). *See generally* 16 G. Couch, *Cyclopedia of Insurance Law* § 61.55 (2d ed. 1983); 73 Am.Jur.2d *Subrogation* § 23 (1974).[4] The question of voluntariness turns on the facts of each particular case. *Sturdevant v. Mills,* 177 Mont. 137, 138, 580 P.2d 923, 926 (1978) (citing 70 C.J.S. *Payments* § 134 (1951)). There is a presumption, however, that a payment is not made voluntarily. *McGuire v. Wilson,* 372 So.2d 1297, 1302 (Ala.1979) (citing 16 G. Couch, *Cyclopedia of Insurance Law* § 61.54 (1966)).

Federal contends it is subrogated to the Weirs' claim against Whirlpool in the amount of $98,207.30—double the coverage of the initial policy. Whirlpool claims that the Weirs' insurance policy provided for a maximum payment of only $49,103.65 because the policy had not been doubled, and therefore any payment made by Federal for a greater amount was voluntary. Whirlpool requested a jury instruction at trial that Federal could not recover from Whirlpool if the jury found that the payment by Federal to the Weirs was voluntary. Whirlpool offered two pieces of evidence to support its argument that the payment was voluntary. First, Whirlpool introduced evidence at trial that Federal challenged the authority of the insurance agent to double the Weirs' policy. Second, Whirlpool sought to introduce evidence that Federal paid the Weirs only after the Weirs brought suit to collect the amount of the doubled policy.[5] The district judge excluded the settlement evidence as unfairly prejudicial under Fed.R.Evid. 403. The district judge refused to give an instruction on voluntariness because there was no evidence to support Whirlpool's claim that the payment had been voluntarily made. Whirlpool challenges both the exclusion of the settlement evidence and failure to give a voluntariness instruction.

We need not decide the issues surrounding the voluntariness question because our rulings on the misuse and warranty issues dictate that this case be remanded for a

---

4. There are two types of subrogation: equitable (also termed legal) and conventional. The right to equitable subrogation arises by operation of law; the right to conventional subrogation arises by contractual agreement. *See, e.g., Commercial Union Ins. Co. v. Postin,* 610 P.2d 984, 986 (Wyo.1980). It is undisputed that it is a defense to a claim of equitable subrogation that the payment was made voluntarily. *Commercial Union Ins. Co.,* 610 P.2d at 987; *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 226 Kan. 197, 207, 597 P.2d 622, 630 (1979). It has been questioned, however, whether voluntariness is not a defense to a conventional subrogation claim. *Compare Hartford Fire Ins. Co.,* 226 Kan. at 207, 597 P.2d at 630 (voluntariness is not a defense to a conventional subrogation claim) *with Commercial Union Ins. Co.,* 610 P.2d at 987 (conventional subrogation is not available when the insurer made a payment for a loss not covered by the policy). The insurance agreement between Federal and the Weirs in this case suggests that we should adopt the position of the court in *Commercial Union Ins. Co.* Federal's right to conventional subrogation is limited by the policy with the Weirs to "any right of action ... for loss of, or damage to, property *covered hereunder."* R.Vol. I p. 101 (emphasis added). Accordingly, if Federal paid the Weirs for losses not covered by the policy, Federal has no contractual right to recover that payment from Whirlpool. Federal could still recover that payment from Whirlpool through *equitable* subrogation, but only if the payment was not voluntary.

5. Federal paid $533,616.62 to the Weirs in settlement of the Weirs' suit against Federal. The parties designated $98,207.30 of this amount as payment of the doubled policy claim, $40,409.30 for interest on the amount due under the policy, and $395,000 "as compensatory damages for the mental anguish, embarrassment, humiliation, and extreme mental suffering which the Weirs have endured as a result of Federal's handling and adjusting of their insurance claim." R.Vol. I p. 71. Whirlpool argues that the settlement was structured in this way so that Federal could pursue a subrogation action against Whirlpool for the amount of the doubled policy rather than for only the original policy amount.

new trial. However, because the issues involving voluntariness are likely to be raised on remand, we will provide some guidance for the district court in considering this question. *See Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983).

### A.

Whirlpool contends that evidence that Federal challenged the authority of the insurance agent to double the Weirs' policy supports a finding of voluntariness. According to Whirlpool, if the agent contacted by the Weirs lacked the authority to double the policy, then Federal would not have been liable for the additional $49,103.65 in coverage, and Federal's payment of that additional amount to the Weirs was voluntary. The district judge, however, ruled that there was no evidence that Federal paid the Weirs voluntarily.

 The liability of an insurer need not be ironclad in order for it to settle a claim without a subsequent finding that the payment to the insured was voluntary. *Agricultural Ins. Co. v. Smith,* 262 Cal. App.2d 772, 778–79, 69 Cal.Rptr. 50, 55 (1968). A payment is not voluntary if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment.[6] 73 Am.Jur.2d *Subrogation* § 25 (1974); *Commercial Union Ins. Co. v. Postin,* 610 P.2d 984, 989–91 (Wyo. 1980). Therefore, evidence that the agent did not in fact have the authority to bind Federal is not sufficient to support a finding that Federal paid the Weirs voluntarily. Whirlpool must introduce evidence that Federal did not have a reasonable or good faith belief in an obligation or personal interest in making the payment in order for Whirlpool to establish that the payment was not made voluntarily. If no such evi-

dence is presented, a jury instruction on voluntariness is inappropriate.

### B.

Whirlpool argues that evidence of the circumstances surrounding the payment made by Federal to the Weirs demonstrates Federal's lack of good faith and that the district judge erred in excluding it. Whirlpool contends that because Federal did not make a payment until after the Weirs filed suit against Federal to collect the amount of the double policy and additional damages for bad faith, the payment was made in bad faith and therefore was voluntary. The district judge excluded the evidence of the circumstances surrounding the payment, ruling that its relevance was outweighed by its prejudicial value under Fed.R.Evid. 403.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The prejudicial effect of allowing a jury to hear of the circumstances surrounding the settlement of a claim was one of the concerns that motivated the drafters of the Federal Rules of Evidence to absolutely prohibit the use of evidence of a settlement to prove liability or the amount of a claim. Fed.R.Evid. 408. Although Rule 408 does not prohibit the admission of evidence of the circumstances surrounding a settlement to prove something other than liability—such as voluntariness—many of the same concerns about prejudice and deterrence to settlements exist regardless of the purpose for which the evidence is offered.

 The district judge must weigh the prejudicial effect of such evidence against the relevance of the evidence. Whirlpool seeks admission of evidence of the circum-

---

6. There are sound policy reasons for these rules. The effect of preventing an insurer from bringing a subrogation action whenever an insurer reaches a settlement after initially challenging a claim would be to deter either settlements or investigations by insurers. But if an insurer was allowed to make a payment unreasonably and in bad faith and then pursue a subrogation

action, the subrogee would be liable for many payments for which no obligation existed. The requirement that an insurer have a reasonable or good faith belief in an obligation rather than an objective showing that such an obligation exists encourages prompt settlement of claims. *Agricultural Ins. Co.,* 262 Cal.App.2d at 779, 69 Cal.Rptr. at 55.

stances surrounding the settlement to show that Federal exhibited bad faith in paying double the policy amount. Whirlpool has offered to limit the scope of the evidence to show simply that other claims existed at the time of the settlement between Federal and the Weirs. Furthermore, Whirlpool has offered this evidence for impeachment purposes in response to Federal's repeated contention that its payment to the Weirs was routine and in good faith.

 We have held that "[t]he exclusion of relevant evidence under Rule 403 is 'an extraordinary remedy to be used sparingly.'" *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir.1985) (citations omitted). The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed by this court absent a clear abuse of discretion. *Id.* The district judge must balance the relevance of evidence of the circumstances surrounding the payment with the prejudicial effect of such evidence. If, on remand, the district judge finds that the evidence of the circumstances surrounding the payment is properly excluded and no other evidence of bad faith is introduced, then the issue of voluntariness should not be submitted to the jury. If, however, the settlement evidence or other evidence of bad faith is admissible, the issue should be submitted to the jury.

### V.

The jury found for Federal on the alternative claims of products liability and the breach of an implied warranty of fitness for a particular purpose. The improper instructions given to the jury on both of these claims make it necessary for us to reverse and remand for a new trial. This conclusion makes it unnecessary for us to reach the issues raised by Federal on its appeal or the other issues raised by Whirlpool on its cross appeal.

REVERSED AND REMANDED.