**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 19 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GREG WALLIS, Parent of Skylar
Wallis, deceased, SHERRI WALLIS,
Parent of Skylar Wallis, deceased, and
BETTY WALLIS, Individually,

        Plaintiffs - Appellants,

    v.

CARCO CARRIAGE
CORPORATION, INC., d/b/a Hertz
Rent-A-Car Licensee and CAMPBELL
HARDAGE, INC., a Corporation,

        Defendants - Appellees/
        Cross-Appellants,

    v.

WANDA A. NASH, Executrix of the
Estate of Neil G. Nash, deceased,

        Third-Party Defendant.

No. 95-7176, 96-7002
(D. Ct. Nos. CIV-94-676 &
CIV-94-676-B)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Before TACHA, LUCERO, and DANIEL,[**] Circuit Judges.

_____

Plaintiffs Betty Wallis, Scott Wallis, and Sherri Wallis appeal a jury verdict in their favor against defendant Carco Carriage Corporation ("Carco"). At trial, the plaintiffs alleged that Carco, a car rental company, negligently entrusted a vehicle to an intoxicated driver, Neil Nash, who injured Betty Wallis and killed Skylar Wallis in an automobile accident. The jury awarded Betty Wallis $142,708.23 as compensation for her injuries and awarded Scott and Sherri Wallis $36,274.13 as compensation for the death of their son, Skylar.

The plaintiffs appeal the jury verdict on two grounds. First, the plaintiffs argue that the district court abused its discretion in refusing to grant them a new trial because the damage award was inadequate. Second, the plaintiffs assert that the district court committed reversible error in permitting Carco to suggest that Nash and his employer, Campbell Hardage, Inc., had settled with the plaintiffs.

Carco cross-appeals on two grounds. First, Carco contends that the district court abused its discretion in permitting the plaintiffs to offer retrograde extrapolation evidence to determine Nash's blood alcohol content at the time of the rental transaction. Second, Carco argues that the district court erred in refusing to grant a directed verdict for Carco based on the absence of any

_____

[**]The Honorable Wiley Y. Daniel, United States District Judge for the District of Colorado, sitting by designation.

2

evidence establishing that Carco knew or should have known of the driver's intoxicated state at the time of the rental transaction. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

In the early morning of September 10, 1995, Neil Nash left his motel in Richmond, Indiana, and drove to the airport in Dayton, Ohio. He took a 6:00 am flight from Dayton to Dallas, Texas. From Dallas, Nash caught a 10:00 am flight to Fort Smith, Arkansas. At 10:56 am, Nash rented a car from Carco to drive to nearby Poteau, Oklahoma, for business purposes. Between 11:30 and 11:45 am, as Nash was driving his rental car, he crossed the center line and collided with another vehicle. Betty Wallis, the driver, suffered physical injuries. Skylar Wallis, her grandson, died in the collision.

Shortly after the accident, Nash received two intravenous fluid infusions. At about 1:00 pm, the authorities drew a sample of Nash's blood. Subsequent tests performed by the Oklahoma State Bureau of Investigation revealed that Nash's blood alcohol content ("BAC") was 0.32% to 0.36%.[1]

---

[1] The laboratory test results revealed a BAC of 0.26%. Nash's blood, however, was lowered by his blood loss and the administration of various fluids during his medical treatment after the accident. Based on the emergency medical and hospital records, the plaintiffs' expert estimated that Nash's true BAC was between 0.32% and 0.36%.

3

On December 30, 1994, Betty, Greg, and Sherri Wallis brought a personal injury action against Carco, alleging that Carco negligently entrusted the vehicle to Nash while he was intoxicated. The plaintiffs also sued Nash and his employer, Campbell Hardage, Inc.

On August 7, 1995, the parties selected a jury. The district court, however, postponed the trial for two weeks. Between the time of the jury selection and opening statements, the plaintiffs settled with Nash and Campbell Hardage for $1,850,000. The plaintiffs proceeded to trial against only Carco.

At trial, the plaintiffs' expert, Dr. Kurt Dubrowski, testified about the effects of alcohol and the rate of metabolization in individuals with a physical condition similar to that of Nash. Assuming that Nash's BAC was 0.36% at the time of the accident, Dr. Dubrowski estimated what Nash's BAC would have been during the rental transaction. He emphasized that his calculations varied based on Nash's alcohol consumption after the rental transaction, as well as Nash's drinking habits, stress levels, fatigue, and other factors.

At trial, Carco sought to introduce evidence of the plaintiffs' settlement with Campbell Hardage and Neil Nash. Over Carco's objections, the district court refused to admit any evidence regarding the settlement agreement. Instead, the court instructed the jury that Campbell Hardage was no longer a party to the suit and not to consider why Campbell Hardage was no longer a party. The court,

4

however, permitted Carco to ask the plaintiffs whether they had filed a lawsuit against Neil Nash and Campbell Hardage.

At the close of the plaintiffs' case, Carco moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), arguing that the evidence was insufficient to show that Carco knew that Neil Nash was intoxicated. The court denied the motion.

On August 28, 1995, the jury returned a verdict in favor of Greg and Sherri Wallis in the amount of $36,274.13 and in favor of Betty Wallis in the amount of $142,708.23. The district court offset the entire amount because the verdict was less than the $1,850,000 settlement. See Okla. Stat. Ann. tit. 12, § 832(H).

The plaintiffs moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a), arguing that damages were inadequate and unreasonably low. Carco renewed its Rule 50 motion for judgment notwithstanding a verdict based on the absence of any evidence that Carco knew that Neil Nash was intoxicated. The district court denied both post-trial motions. This appeal followed.

## DISCUSSION

### I. ADEQUACY OF THE JURY VERDICT

The plaintiffs argue that district court abused its discretion in refusing to grant them a new trial because the jury's verdict awarding $35,273.53 to Greg and

5

Sherri Wallis and awarding $142,708.23 to Betty Wallis was inadequate. We review the district court's determination that the damages awarded by the jury were not so inadequate as to require a new trial for an abuse of discretion. Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1457 (10th Cir. 1997). We will find no abuse of discretion unless the verdict is so inadequate "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985) (quoting Barnes v. Smith, 305 F.2d 226, 228 (10th Cir. 1962)).

### A. Verdict in Favor of Greg and Sherri Wallis

Greg and Sherri Wallis argue that the district court abused its discretion in refusing to grant them a new trial on the ground that the jury award of $35,273.53 was inadequate. In particular, Greg and Sherri Wallis assert that because they sought to recover $33,356.45 in medical expenses and $2,917.08 in funeral expenses, the $35,273.53 jury award only compensated them for medical and funeral expenses. Greg and Sherri Wallis maintain that the jury ignored "clear, substantial, and totally unrefuted evidence of a close, constant, and loving relationship" between the plaintiffs and their son. App't Brief, at 4.

"In diversity cases involving damages, the federal court must look to appropriate state law to ascertain the elements of the allowable damages." Black

6

v. Hieb's Enters., Inc., 805 F.2d 360, 365 (10th Cir. 1986). Under Oklahoma law, parents may recover damages for the death of a minor child. The relevant statute states:

> In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just.

Okla. Stat. Ann. tit. 12 § 1055.

The Supreme Court of Oklahoma recently addressed the scope of section 1055 in Death of Lofton v. Green, 905 P.2d 790 (Okla. 1995). In that case, a mother's six-year-old child drowned in a neighbor's swimming pool. Id. at 791. The mother brought a wrongful death suit alleging that the pool was an attractive nuisance. Id. The jury awarded the mother $4,200 in damages, and the mother appealed, arguing that the jury verdict was inadequate. Id. Affirming the award, the court stated:

> We are mindful of the loss this parent has suffered. It is the function of the jury however, to properly evaluate the various elements of alleged damages and to pass upon the credibility of lay witnesses and determine the weight and value of their testimony. The extent of the plaintiff's pecuniary and emotional loss was a matter exclusively for the jury to determine. Evidence must be introduced to support an award. In that Appellants do not direct us to any evidence which would substantiate a reversal, the damage award is sustained.

7

Id. at 793 (citations omitted). Lofton makes clear that while section 1055 permits a jury to award damages for loss of companionship and destruction of the parent-child relationship, the statute does not require the jury to make such an award in every case.

After carefully reviewing the record on appeal, we conclude that the district court did not abuse its discretion in refusing to grant a new trial based on an inadequate damage award. At trial, Greg and Sherri Wallis testified that they had maintained a good relationship with their son. Their testimony, however, also established that they were divorced, and as a result, Skylar spent much time with his grandmother. Under these circumstances, "[t]he jury was entitled to disbelieve their testimony or to give it as much weight as it felt it deserved." Crane v. Mekelburg, 728 F.2d 439, 443 (10th Cir. 1984). "Damages are not grossly inadequate merely because a jury awards less than the plaintiff has requested. 'The jury is entitled to disregard the damages asked for if they do not agree with the computations or if other evidence is introduced from which jurors could draw their own conclusions.'" Shugart v. Central Rural Elec. Coop., 110 F.3d 1501, 1506 (10th Cir. 1997) (quoting Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc., 600 F.2d 103, 115 (7th Cir. 1979)).

8

We recognize that Skylar's death is tragic. "Even though this court might have awarded damages on a different plane, this is not the test as to whether the jury's verdict was in error." Crane, 728 F.2d at 443. Instead, we must determine whether the verdict "shocks the judicial conscience" such that we may infer that "passion, prejudice, corruption, or other improper cause invaded the trial." Bennett, 774 F.2d at 1028. After reviewing, the record, we cannot infer that bias and prejudice was present in this case.

**B.     Verdict in Favor of Betty Wallis**

Betty Wallis argues that the district court abused its discretion in refusing to grant her a new trial because the jury awarded her only $143,708.23 in damages. Betty Wallis emphasizes that she sought to recover $118,708.23 in medical expenses and $14,725.00 in lost wages. Thus, she contends that the verdict of $143,708.23 constituted $118,708.23 for medical expenses, $14,725.00 for lost wages, and $10,275.00 for her pain and suffering, disability, emotional distress, and other injuries. Betty Wallis asserts that the $10,275.00 was inadequate to compensate such injuries.

After carefully reviewing the record on appeal, we conclude that the district court did not abuse its discretion in refusing to grant a new trial based on an inadequate damage award. In short, Betty Wallis has not shown that the award of $10,275.00 for pain and suffering "shocks the judicial

9

conscience" and fails to point to any evidence indicating passion or prejudice on the jury's part. See Black, 805 F.2d at 362. Although the evidence of Betty Wallis's damages was not directly controverted, it is quite possible that the jury did not find her experts to be convincing. See Moore v. Subaru of America, 891 F.2d 1445, 1452 (10th Cir. 1989). "This was properly within the jury's province." Id. We refuse to alter a jury verdict without further proof of jury passion or prejudice. Thus, we affirm the district court's denial of a new trial based on the inadequacy of damages.

## II.    EVIDENCE OF THE SETTLEMENT AGREEMENT

The plaintiffs contend that the district court erred in permitting Carco to "suggest" that the plaintiffs had settled with Nash and Campbell Hardage. In response, Carco asserts that the district court erred in failing to admit evidence of the settlement agreement to prove bias or prejudice of a witness.

We review the district court's admission or exclusion of evidence under an abuse of discretion standard. United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir.

1995) (quoting <u>McEwen v. City of Norman</u>, 926 F.2d 1539, 1553 (10th Cir. 1991)).

### A.   Admission of Evidence "Suggesting" Settlement

On appeal, the plaintiffs argue that the district court abused its discretion in permitting Carco to "suggest" that the plaintiffs had settled with Campbell Hardage.  The plaintiffs assert that the settlement evidence was irrelevant to the only issue in the case—whether Carco knew or should have known that Neil Nash was intoxicated during the rental transaction and the amount of damages—and, therefore, such evidence was unduly prejudicial.  <u>See</u> Fed. R. Evid. 401, 402, & 403.

The plaintiffs contend that four times during the trial, Carco implied that they had settled with Nash and Campbell Hardage.  The first incident involved Carco's cross-examination of Eric Nickell, a witness to the accident:

> Q: Did you ever go to the car where the other people were hurt?
> A: Yes.
> Q: But your wife attended to Mr. Nash, the driver of the -- responsible party?
> A: Yes.
> Q: And you said that you smelled alcohol on Mr. Nash, the driver of the responsible car?
> A: Right.

App't App. at 119.  The second incident involved Carco's cross-examination of Greg Wallis:

11

> Q: When you filed this lawsuit, you also sued Campbell Hardage, Inc., a corporation, did you not?
>
> A: Yes.
>
> Q: And you filed suit against them for the acts of their employee, Neil Nash?
>
> A: And I also -- yes.

App't. App. at 132. The third incident occurred when Carco's attorney cross-examined Sherri Wallis:

> Q: Ma'am, when this suit was filed you filed suit against Campbell Hardage, did you not?
>
> A: Yes, sir.
>
> Q:; And you were blaming them for causing this accident?
>
> A: Yes, sir.
>
> Q: And, in fact, until a week ago this Friday they were still a party to this lawsuit, were they not?
>
> A: Yes, sir.

App't App. at 164. The final incident occurred during closing arguments.

The following exchange took place between the defendant's counsel (D), the

plaintiffs' counsel (P), and the court (C):

> D: Now, the fact of the matter is in the entire presentation of this case through the testimony, and you have common sense, that plaintiff, Mr. George and the attorney for Campbell Hardage had one purpose in mind together. They had a common understanding to put the blame on Carco. You could tell by the questions they were asking. They both tried to put the blame on Carco. They were in bed together.
>
> P: Your Honor, that's highly improper.
>
> C: It will be overruled.
>
> D: They were in bed together. He then gets out of bed and tries to put us in bed with Campbell Hardage. That's what they were doing and then a week ago, last Friday, Campbell Hardage is no longer here. But they want you and they ask you — they look you straight in the eye and say, 'We want Carco to pay for

12

this, to pay all of our damages.' Now, I ask you, who is being fair and up front in this case? Now, you will remember Mr. Hamilton, the stock car racer. He tells us when everybody is in this lawsuit that there is a pint or half a pint out there half full and that he associated that liquor with Mr. Neil Nash. Then he comes in here and suddenly he doesn't associate it. Now the parties in bed together are different.

P:     Your, Honor, that isn't the evidence.

D:     He said that in his deposition.

C:     Well, the jury will have to recall what the evidence was. Arguments of counsel are not evidence, as I have told you. Please proceed.

D:     You will remember the evidence. At the time of the accident he associated it with the accident, but when he testified he did not.

App't App. at 165.

Although the above-quoted testimony was not relevant to the central issue in the case, we hold that the district court did not abuse its discretion in permitting Carco to question the witnesses about the liability of Nash and Campbell Hardage. As the district judge concluded, Carco was entitled to argue that Nash and Campbell Hardage were the sole proximate cause of the accident:

This is not any different than any other case. I mean, [Carco's] defense is that [it] did not do anything and that somebody else caused the accident, so to speak.

App't App. at 127. Moreover, the district court recognized that the jury knew that the plaintiffs had filed suit against Nash and Campbell Hardage:

[The] jury already knows there was a claim against Campbell Hardage. When this case started out they knew it. They heard voir

13

dire questions about it. They know that the claim was made and I don't see how there is — you know, there is nothing that I can do or say to erase that.

App't App. at 124-25. We conclude that the district court did not abuse its discretion in permitting Carco to conduct a limited inquiry into the liability of the settling defendants and the plaintiffs' lawsuit against them.

### B. Admissibility of the Settlement Agreement

Carco contends that the district court abused its discretion in refusing to admit evidence of the settlement agreement between the plaintiffs, Campbell Hardage, and Nash. Under Federal Rule of Evidence 408, settlement agreements are "not admissible to prove liability" but may be admissible if "offered for another purpose, such as proving bias or prejudice." Fed. R. Evid. 408. Carco asserts that the district court abused its discretion in excluding evidence of the settlement agreement to show bias under Rule 408. Carco, however, fails to explain how it would have impeached any witness with the settlement agreement. Moreover, Carco fails to recognize that Rule 408 is merely an exclusionary rule, not one providing for the admission of evidence. Thus, even if Carco sought to show bias or prejudice of a witness in introducing the settlement agreement, the district court may still exclude the evidence under Federal Rule of Evidence 403 if the danger of unfair prejudice substantially outweighs the relevance of

14

the evidence.  See Weir v. Federal Ins. Co., 811 F.2d 1387, 1395 (10th Cir. 1987).  As we explained in Weir:

> The prejudicial effect of allowing a jury to hear of the circumstances surrounding the settlement of a claim was one of the concerns that motivated the drafters of the Federal Rules of Evidence to absolutely prohibit the use of evidence of a settlement to prove liability or the amount of a claim.  Fed. R. Evid. 408.  Although Rule 408 does not prohibit the admission of evidence of the circumstances surrounding a settlement to prove something other than liability—such as voluntariness—many of the same concerns about prejudice and deterrence to settlements exist regardless of the purpose for which the evidence is offered.

Id.

In this case, the district court was clearly concerned that admission of the settlement agreement would prejudice the plaintiffs.  The court, however, permitted the defendants to conduct a limited inquiry into the plaintiffs' lawsuit against the settling defendants.  Under these circumstances, we conclude that the district court did not abuse its discretion in declining to admit the settlement agreement itself.

Alternatively, Carco asserts that the settlement is admissible under the holding of Warner/Elektra/Atlantic Corp. v. County of DuPage, No. 83-C-8230, 1991 WL 32776 (N.D. Ill. Mar. 6, 1991).  Carco asserts that the settlement agreement is admissible to prove that the conduct of Nash—and not Carco—was the sole proximate cause of the plaintiffs' injury.

15

In County of DuPage, the plaintiffs sued several defendants as a result of the flooding of a warehouse.  Id. at *1.  The sole nonsettling defendant sought to prove that the settling defendants were the sole proximate cause of the accident.  Id.  In admitting such evidence, the court stated that "plaintiffs would have the issue of proximate cause tried in a vacuum, with no reference to the other actors whose conduct may also have been a proximate cause of plaintiffs' injury."  Id. at *3.  Without such evidence, the court reasoned, "the jury's natural question—'If not you, who?'—would be left unanswered."  Id.

County of DuPage is clearly distinguishable from the present case.  In short, County of DuPage addressed only the admissibility of the negligence of a settling tortfeasor, not the admissibility of a settlement agreement.  The language of Rule 408 is clear:  settlement agreements are not admissible to prove liability.  Thus, the district court did not abuse its discretion in refusing to admit evidence of the settlement agreement to prove the liability of the settling defendants.[2]

---

[2]  Carco also asserts that evidence of the settlement agreement is admissible because "Oklahoma law allows for admission of evidence of out of court settlements by co-defendants."  App't Brief, at 23.  Though not entirely clear from the briefs,  Carco apparently contends that Rule 408 conflicts with Oklahoma's substantive law on the admissibility of settlement agreements.  See Carota v. Johns Manville Corp., 893 F.2d 448, 451 (1st Cir. 1990) ("If a state has a substantive policy to have a jury hear out of court settlement evidence when determining damage awards, we will not contravene that

16

## III.  RETROGRADE EXTRAPOLATION EVIDENCE

Carco argues that the district court erred in admitting the testimony of Dr. Kurt Dubrowski regarding retrograde extrapolation evidence. Retrograde extrapolation is a method of estimating a person's blood alcohol level at a specified time by using the person's known blood alcohol content at a later time. Carco asserts that because the amount of alcohol that Nash consumed after the rental transaction was unknown, retrograde extrapolation is unreliable and speculative. We review the district court's admission of the retrograde extrapolation evidence in this case for an abuse of discretion. United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997).

At trial, Dr. Dubrowski prepared a chart that calculated what Nash's blood alcohol content would have been depending on how much he drank in the 35 to 45 minute interval between the rental transaction and the accident. For example, if Nash had not consumed any alcohol during that interval, he would have had a BAC of 0.39% at the time of the transaction. Similarly, if

state law in a diversity action.").

    We have reviewed Oklahoma's law on the admissibility of settlement agreements. Oklahoma's evidentiary rule on settlement agreements closely resembles Rule 408. See Okla. Stat. Ann. tit., 12 § 2408. Moreover, unlike Carota, Oklahoma has no substantive law requiring the jury to reduce a jury verdict by the compensation already received by the plaintiff from absent settling tortfeasors. See Cleere v. United Parcel Serv., Inc., 669 P.2d 785, 789 (Okla. Ct. App. 1983). Thus, we reject Carco's argument that the settlement agreements in this case were somehow admissible under Oklahoma law.

Nash had consumed twelve ounces of 90-proof whiskey, his BAC would have been 0.15% at the time of the rental transaction. In addition to emphasizing that his calculations varied based on Nash's alcohol consumption after the rental transaction, Dr. Dubrowski informed the jury that his findings depended on Nash's drinking habits, stress levels, fatigue, and other factors.

We hold that the district court did not abuse its discretion in admitting Dr. Dubrowski's retrograde extrapolation testimony. Dr. Dubrowski did not give a definitive estimate of Nash's BAC at the time of the rental transaction. Instead, the expert testified that his determination of Nash's BAC at the time of the rental transaction depended on Nash's consumption of alcohol during the 35 to 45 minute time interval between the transaction and the accident. Carco's objections to the speculative nature of such testimony go to the weight, and not the admissibility, of the evidence.

Carco's reliance on United States v. DuBois, 645 F.2d 642 (8th Cir. 1981) is misplaced. In DuBois, the Eighth Circuit addressed the admissibility of retrograde extrapolation evidence in a drunk driving case. Id. at 643. The evidence indicated that the defendant drank one beer before getting into his car. Id. As he was driving, the defendant struck and killed a pedestrian. Id. Instead of remaining at the scene of the accident, the

18

defendant proceeded to a nearby town and purchased a six-pack or twelve-pack of beer.  Id.  The defendants' children observed the defendant drink two to four cans of beer after the accident.  Id.  Another witness testified that the defendant drank one can of beer.  Id.  A breathalyser test administered less than three hours after the accident revealed that the defendant had a BAC of 0.22%.  Id.

At trial, a forensic chemist attempted to estimate the defendant's BAC at the time of the accident.  Id.  The chemist assumed that the defendant had "an average" of three beers after the accident.  Id.  Based on a "burn off" rate of 0.15 percent per hour, the chemist estimated that the defendants BAC was 0.22% at the time of the accident.  Id.

On appeal, the Eighth Circuit concluded that the evidence was insufficient to prove beyond a reasonable doubt that the defendant was driving while intoxicated.  The court reasoned:

> While there may be instances where an expert's estimate could account for intervening consumption and could thus serve as sufficient evidence of intoxication at the earlier time, this is not such a case.  When there has been intervening consumption an accurate estimate requires knowledge of three variables:  the blood alcohol level at the later time, the time elapsed since the accident, and the amount consumed in the interim.  In this case, the expert did not know the amount consumed in the interim.  Possibilities ranged anywhere from three to twelve beers.  As a result, Ms. Pearson's conclusion that the defendant had a .22 or even a .1 per cent blood alcohol at the time of  the accident is simply conjecture, and it is well

established that "a jury is not justified in convicting a defendant on the basis of mere suspicion, speculation or conjecture."

Id. at 644-45 (citations omitted).

We agree with the DuBois court's observation that there may be inherent difficulties in making a retrograde extrapolation calculation when there is an intervening consumption of alcohol. Nevertheless, DuBois is distinguishable from the present case on several grounds. First, DuBois involved a sufficiency of the evidence issue, while the present case involves the admissibility of evidence. Second, DuBois was a criminal case, not a negligence action. Third, the expert in DuBois calculated the defendants BAC based on an "average" intervening consumption of three beers. In contrast, Dr. Dubrowski estimated Nash's BAC at the time of the rental transaction depending on Nash's alcohol consumption between the transaction and the accident. Finally, in DuBois, the evidence indicated that the defendant had consumed alcohol during a three-hour period between the accident and the defendant's arrest. In this case, the record indicates that the interval between the rental transaction and the accident was only thirty-five to forty-five minutes. Accordingly, we hold that the district court did not err in admitting retrograde extrapolation evidence to estimate Nash's level of intoxication at the time of the rental transaction.

## IV.    RULE 50 MOTION

20

Carco asserts that the district court erred in denying its motion for a directed verdict because the record contains no evidence establishing that Carco knew or should have known that Nash was intoxicated at the time of the rental transaction. We review de novo a district court's denial of a Rule 50 motion for judgment as a matter of law, using the same standard as the district court. Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996). A party is entitled to judgment as a matter of law if construing the evidence and inferences most favorable to the nonmoving party, "the court is certain the evidence 'conclusively favors one party such that [a] reasonable [jury] could not arrive at a contrary verdict.'" Id. (quoting Western Plains Serv. Corp. v. Ponderosa Dev. Corp., 769 F.2d 654, 656 (10th Cir. 1985)). In a diversity case such as this, "we examine the evidence in terms of the underlying burden of proof as dictated by state law." Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1463 (10th Cir. 1994)).

After reviewing the record, we conclude that the record was sufficient for a reasonable jury to find that Carco knew or should have known that Nash was intoxicated at the time of the rental transaction. As discussed above, the plaintiffs' expert estimated what Nash's BAC would have been at the time of the rental transaction, depending on the amount of alcohol he consumed during the 35 to 45 minute interval between the transaction and

the accident. The plaintiffs also presented several witnesses who testified that Nash could not hold his liquor. The plaintiffs called a handwriting expert to testify that Nash's signature on the rental agreement was a forgery, theorizing that the rental clerk had signed Nash's name because he was too intoxicated to sign his own name. Under these circumstances, we hold that a reasonable jury could have found that Carco knew or should have known that Nash was intoxicated at the time of the rental transactions. Thus, the district court did not err in denying Carco's motion for a directed verdict.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge