David Earl PATE, Appellee,

v.

MFA MUTUAL INSURANCE COMPANY, Appellant.

No. 54192.

Court of Appeals of Oklahoma, Division No. 2.

July 13, 1982.

Released for Publication by Order of the Court of Appeals Aug. 13, 1982.

David L. Thomas, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee.

John R. Couch, Jr., Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellant.

BACON, Judge.

This appeal involves a suit by an insured against an insurer to recover under the medical pay coverage of an automobile liability policy. The insurer appeals from an order of the trial court sustaining insured's motion for summary judgment.

The stipulated facts reflect that insured, David Earl Pate, was a resident of Arkansas in 1977. In June of 1977 Pate purchased the policy of automobile insurance in question in his hometown of Blytheville, Arkansas. The policy provided that insurer, MFA Mutual Insurance Company, would pay all reasonable medical expenses of Pate and his relatives incurred within one year of any automobile accident. The policy had a $2,000 per person limitation on the medical coverage.

On November 24, 1977, Pate, his wife and daughter were involved in an automobile accident on Interstate 35 near Davis, Oklahoma. Pate's wife and daughter were killed and Pate was seriously injured in the accident. Numerous medical expenses were incurred by Pate for himself and for his wife and daughter before their deaths. With one exception, all medical services expenses Pate sues for in the present case were incurred in Oklahoma.

Prior to the present suit being filed, Pate entered into a complete settlement with the insurer of the third party tortfeasor, which settlement included all of the Pate family medical expenses.

On August 31, 1978, Pate filed the present suit in the District Court of Oklahoma County, Oklahoma. In his petition Pate alleged the existence of the policy, itemized the medical expenses incurred and prayed for $3,970.83.

Insurer's answer pleaded as a defense the following provision of the policy:

"7. Reimbursement—In the event a recipient of benefits under this Coverage C recovers in tort for injury, either by settlement or judgment, the Company shall have a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection which shall be assessed against the Company and the recipient in the proportion each benefits from such recovery."

Insurer's position under the above provision of the policy is that since Pate settled with and released the third party tortfeasors, insurer was entitled to "credit" the amount paid Pate for medical payments against any claim made by Pate against insurer for medical payments.

Pate's reply urged such a provision in a policy is void in Oklahoma. Pate cited 36 O.S.1981 § 6092 (effective in 1971), entitled "Limitations on subrogation and setoff under medical coverage," which reads:

"No provision in an automobile liability policy or endorsement for such coverage effective in this state issued by an insurer on and after the effective date of this act which grants the insurer the right of subrogation for payment of benefits under the expenses for the medical services coverage portion of the policy, to a named insured under the policy, or to any relative of the named insured who is a member of the named insured's household shall be valid and enforceable; provided, that such policy or endorsement may provide for said insurer's rights of subrogation and setoff upon such payments to any person who is not a named insured under the policy or a relative of the named insured who is a member of the named insured's household."

Both parties then moved for summary judgment. The trial court sustained summary judgment in favor of Pate and further awarded him a $1,000 attorney's fee pursuant to 36 O.S.1981 § 3629, as amended in 1977. Insurer now appeals and argues under one basic proposition: that is, does Oklahoma or Arkansas law govern?

Insurer takes the position that the insurance contract was entered into in Arkansas, the policy provision above referred to is valid under Arkansas law, Arkansas law should apply and thus the court erred in holding that Oklahoma law prohibiting such a policy provision governed.

Pate's position, of course, is opposite from insurer's. That is, Pate urges Oklahoma prohibits such policy provision and Oklahoma law should apply.

■ No Oklahoma cases have been brought to our attention that we deem applicable to the present set of facts. The general rule of law is that a contract will be governed by the laws of the state where the contract was entered into (unless otherwise agreed), unless contrary to the law or public policy of the state where enforcement of the contract is attempted. *Telex Corp. v. Hamilton*, Okl., 576 P.2d 767 (1978); *Clark v. First Nat. Bank*, 59 Okl. 2, 157 P. 96 (1916).

Restatement (Second) of Conflict of Laws § 6 (1971), and the comments following same read:

"§ 6. Choice-of-Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

"Comment on Subsection (1) [of § 6]:

"a. *Statutes directed to choice of law.* A court, subject to constitutional limitations, must follow the directions of its legislature. The court must apply a local statutory provision directed to choice of law provided that it would be constitutional to do so. An example of a statute directed to choice of law is the Uniform Commercial Code which provides in certain instances for the application of the law chosen by the parties (§ 1–105(1)) and in other instances for the application of the law of a particular state (§§ 2–402, 4–102, 6–102, 8–106, 9–103). Another example is the Model Execution of Wills Act which provides that a written will subscribed by the testator shall be valid as to matters of form if it complies with the local requirements of any one of a number of enumerated states. Statutes that are expressly directed to choice of law, that is to say, statutes which provide for the application of the local law of one state, rather than the local law of another state, are comparatively few in number.

"*b. Intended range of application of statute.* A court will rarely find that a question of choice of law is explicitly covered by statute. That is to say, a court will rarely be directed by statute to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue. *On the other hand, the court will constantly be faced with the question whether the issue before it falls within the intended range of application of a particular statute. The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect.* If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application. Sometimes a statute's intended range of application will be apparent on its face, as when it expressly applies to all citizens of a state including those who are living abroad. *When the statute is silent as to its range of application, the intentions of the legislature on the subject can sometimes be ascertained by a process of interpretation and construction. Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles.*" (emphasis in text ours)

█ We find under the circumstances of this case that Oklahoma law should apply. The legislature in adopting § 6092 specifically prohibited an insurance policy from providing for subrogation and setoff under medical coverage for members and relatives of insured's family and household. Although the policy in the present case calls it a "credit," the effect of subrogation and/or setoff is still the same. The Oklahoma legislature in passing § 6092 and all other statutes pertaining to automobile insurance and the use of automobiles in Oklahoma intended those laws to apply to *all* vehicles using the roadways in Oklahoma. We say this because such must be the intent of the legislature otherwise, for example, automobiles from another state not requiring mandatory liability insurance could travel in our state and thus expose residents to damage or injury by uninsured motorists. To permit such to happen would clearly be in violation of the legislature's intent to keep uninsured motorists (residents or nonresidents) off of the highways of Oklahoma. In the present case we find it was the intent of the legislature in enacting § 6092 that insurers not be allowed subrogation, setoff, credit or whatever else one calls it on medical payments received by an insured.

We conclude that the provision in the policy in question, although valid in Arkansas, is invalid in Oklahoma because of § 6092. The judgment of the trial court is, therefore, affirmed.

BOYDSTON, P. J., and BRIGHTMIRE, J., concur.