Thomas A. MOORE and Edward J. Moore, Jr.,
Plaintiffs–Appellants/Cross–Appellees,

v.

SUBARU OF AMERICA, a New Jersey corporation; Randall S. Loftis, doing business as Ran's Subaru, Defendants–Appellees/Cross–Appellants.

Nos. 88–1314, 88–1327 and 88–1364.

United States Court of Appeals,
Tenth Circuit.

Dec. 14, 1989.

Garvin A. Isaacs (Thomas A. Wallace, and Glen D. Huff and David A. Branscum of Foliart, Huff, Ottaway & Caldwell, Oklahoma City, with him on the briefs), for plaintiffs-appellants/cross-appellees.

Bert M. Jones and William D. Perrine of Rhodes, Hieronymus, Jones, Tucker and Gable, Tulsa, for defendants-appellees/cross-appellants.

Before McKAY, McWILLIAMS, and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal from a jury verdict and set-off of prior settlement.

## I. *Facts*

Plaintiffs were injured in an automobile accident on August 17, 1982, in Shawnee, Oklahoma. They were rear seat passengers in a 1982 Subaru station wagon when the owner-driver suffered an epileptic seizure and crashed into a brick building. Although plaintiffs originally sought recovery only against the owner-driver of the vehicle, the complaint was later amended to include Subaru of America. The owner-driver of the vehicle was dismissed upon executing a settlement and/or a loan-receipt agreement with each plaintiff.

At trial, plaintiffs Thomas and Edward Moore claimed a defective rear seat belt design and defective seating system rendered Thomas Moore a quadriplegic and caused serious injury to Edward Moore. The trial was bifurcated and the jury found for plaintiffs on the issue of liability. On April 8, 1987, the jury rendered its verdict on the issue of damages in favor of Thomas Moore in the amount of $1.5 million and in favor of Edward Moore in the amount of $40,000.00. Barbara Moore was not a par-

ty to the trial, having dismissed her case with prejudice the day before trial.

On July 24, 1987, after entering judgment on the jury verdict, the trial court set off the amounts received by plaintiffs' settlement with the owner-driver's insurance carrier. Edward Moore received $125,000.00 from the owner-driver's primary insurance carrier. Thomas Moore received $244,072.00 from the primary insurance carrier and $2,000,000.00 from the excess carrier in the form of a loan-receipt agreement. Finding that the purported loan-receipt agreement was subject to set-off, the trial court reduced $2,000,000.00 from the jury verdict for Thomas Moore and $125,000.00 from the jury verdict entered in favor of Edward Moore. Further orders were entered by the trial court on January 28, 1988, after timely Rule 59 motions by both parties. The trial court ordered prejudgment interest on the jury verdict prior to set-off. The trial court also ordered defendant to pay plaintiff's attorney fees and expenses as a sanction for discovery disputes and costs. On February 22, 1988, the trial court entered an Amended Judgment calculating prejudgment interest from the date Subaru was joined and set off the additional amount of $244,072.00 which Thomas Moore received from the primary insurer of the owner-driver.[1] The trial court found that plaintiff Thomas Moore should recover nothing because the verdict in his favor was less than the set-off amount and he was not entitled to post-judgment interest. The same was true for Edward Moore.

Plaintiff Thomas Moore appeals the trial court's set-off of the loan-receipt agreement claiming that set-off is not allowed under Indiana law and that Subaru waived the affirmative defense of set-off. Thomas Moore also alleges that the damages awarded are inadequate as a matter of law. Plaintiffs Thomas Moore and Edward Moore claim the trial court erred in not giving an instruction on punitive damages and excluding evidence of implied admissions of liability by misconduct on dis-

---

1. Prejudgment interest for Thomas Moore was calculated to be $513,750.00 for a total award of $2,013,750.00 less the total set-off of $2,224,072.00.

covery. Defendant presents a protective cross-appeal regarding the trial court's order and computation of pre-judgment interest prior to set-off and the trial court's error in evidentiary rulings. Because the relief defendant requests is dependent upon the outcome of plaintiffs' appeal, we will first address the three basic issues presented by the appellants.

## II. *Standard of Review*

■ The decisions by trial court judges which concern questions of fact are reviewed under the "clearly erroneous" standard. A finding of fact is "clearly erroneous" if the appellate court, after reviewing the record, finds no factual support for the decision. *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987); *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986). When there are two permissible views of the evidence, the factfinder's choice will not be reversed as clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *see Lone Star Steel Co. v. United Mine Workers*, 851 F.2d 1239, 1242 (10th Cir.1988).

■ Under the Tenth Circuit Rules of Court, Rule 28.2(d),[2] each party has a duty to state, in their initial briefs, where in the record each issue was raised and ruled upon. Rule 28.2(e) states:

> Whenever an appeal is based upon a failure to admit or exclude evidence, or the giving or refusal to give a particular jury instruction, or any other act or ruling for which a party must record an objection to preserve the right to appeal, the party shall state where in the record a proper objection was made to the ruling and whether the objection is recorded and ruled upon.

The appellants here have failed to reflect where in the record the majority of issues contained in their briefs were raised, ruled

upon, and objections made. Furthermore, the appellants have failed to designate many parts of the record which they make general reference to in their briefs. Without the record before us to substantiate the general allegations of error, we must defer to the trial court's decisions in these areas.

## III. *Set–Off of Loan–Receipt Agreement*

In order to determine if set-off was proper, we must first resolve the issue of whether Indiana or Oklahoma law applies to the loan-receipt agreement. The agreement states that Indiana law governs its terms. However, Oklahoma is the forum state for this litigation.

■ In actions where jurisdiction is based on diversity of citizenship, the substantive law, including the choice of law rules, of the forum state is applied. *Pound v. Insurance Co. of North America*, 439 F.2d 1059, 1062 (10th Cir.1971); *Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516, 522–23 (10th Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979). Although the language of the loan-receipt agreement states that Indiana law governs the terms of the agreement, Indiana appears to be one of the few jurisdictions which recognizes these agreements as valid contracts which can circumvent set-off. *American Transport Co. v. Central Indiana Railway Co.*, 255 Ind. 319, 264 N.E.2d 64 (1970). We hold that the trial court correctly found under conflict of law principles that Oklahoma law applies to the facts of this case.

■ The trial court found that Oklahoma law applied to the loan-receipt agreement under principles of either tort or contract law. When evaluating the facts of this case as a tort question, the Oklahoma choice of law rule requires application of the law of the state with the most significant relationship to the parties. *White v. White*, 618 P.2d 921, 924 (Okla.1980); *Brickner v. Gooden*, 525 P.2d 632, 637

---

**2.** The current local rules as amended were effective January 1, 1989. Although the parties may have prepared their briefs prior to the effective date, the former rules contained identical lan-

guage. Current local rule 28.2(d) was formerly Rule 28.2(e), and current local rule 28.2(e) was formerly 28.2(f).

(Okla.1974). The trial court concluded that "the state with the most significant relationship to the accident is Oklahoma." Order, July 24, 1987, at 5. We agree.

Even if the loan-receipt agreement issue is classified as contract, Oklahoma law applies. The Oklahoma choice of law rules for contracts require the forum court to apply the law of the state (1) chosen by the parties, *Pate v. MFA Mutual Ins. Co.*, 649 P.2d 809, 811 (Okla.App.1982); (2) where the contract was made or entered into, *Telex Corp. v. Hamilton*, 576 P.2d 767, 768 (Okla.1978); or (3) the place of performance if indicated in the contract, *Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416 (10th Cir.1985). The plaintiff and owner-driver chose the law of Indiana to apply to their agreement, and the loan was to be repaid (performed) in Indiana. The loan was entered into by Thomas Moore in Pennsylvania. Thus, under normal circumstances, a forum court applying Oklahoma choice of law rules for contracts would probably apply Indiana or perhaps Pennsylvania law, but under these three tests the forum court would not apply Oklahoma law.

However, two additional considerations require the application of Oklahoma law to the set-off issue under the facts of this case. These two considerations stem directly from the reasoning of *Pate v. MFA Mutual Insurance Co.*, 649 P.2d 809 (Okla. App.1982). In *Pate*, the defendant insurance company sought to enforce a contract provision requiring credit for settlement with any other tort-feasor. This contract was entered into in Arkansas, and the policy was valid under Arkansas law. The *Pate* court, however, concluded that although normally the law of the state where the contract was entered into applied, in this case it would not apply Arkansas law because Arkansas law was contrary to the law and public policy of Oklahoma, the state of enforcement. *Id.* at 811. The *Pate* court pointed to a specific Oklahoma statute which made invalid any insurance provisions which attempted the very kind of credit attempted by Pate's insurer. The *Pate* court also cited the comments to the *Restatement (Second) of Conflict of Laws* § 6 (1971) which state that "the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual conflict-of-law principles." *Id.* at 812. This principle, adopted in *Pate*, is directly applicable to the present case. Oklahoma law requires set-off of any type of settlement and discharges the defendant from contribution to any other tort-feasor. Applying contrary Indiana law would not fulfill the intentions of the Oklahoma legislature in passing this statute.

The second reason for applying Oklahoma law stems from the *Pate* court's adoption of the *Restatement (Second) of Conflict of Laws*. Section 187(2)(b) of the Restatement requires the application of the law of the state with a materially greater interest in the determination of the issue if the application of the law of the state chosen by the parties would be contrary to the first state's fundamental policy.[3] The trial court found that "Oklahoma law applies because it has a materially greater interest

---

3. § 187. **Law of the State Chosen by the Parties**

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) *The law of the state chosen by the parties to govern their contractual rights and duties will be applied,* even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless* either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) *application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue* and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) Conflict of Laws § 187 (1988) (emphasis added).

in the validity of the loan-receipt agreement." Order, July 24, 1987, at 7. Given the facts of this case, to hold otherwise would allow parties to circumvent forum state policy by selecting a state's law which is more favorable to the particular parties' position.

The issue of whether the loan-receipt agreement should be set off against the jury verdict is governed by Okla.Stat. tit. 12, § 832. Section 832(H) provides as follows:

H. When a *release, covenant not to sue or a similar agreement* is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but *it reduces the claim against others to the extent of any amount stipulated* by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It *discharges the tort-feasor* to whom it is given *from all liability for contribution to any other tort-feasor.*

Okla.Stat.Ann. tit. 12, § 832 (West 1988) (emphasis added).

The trial court made the following findings regarding the loan-receipt agreement between appellant Thomas Moore and the driver-owner's excess insurance carrier: [4]

Paragraph 4 of the agreement states that Thomas Moore "agrees to obtain the *dismissal of* his *pending claim* against David M. Diamond" and "*covenants and agrees* that he will never bring or prosecute or allow to be brought or prosecuted in his name or on his behalf any action, suit or proceeding of any kind or character against David M. Diamond." Further, the agreement, in paragraphs 1 & 2, provides that the *loan is without interest* and is "*repayable only* in the event and *to the extent of one-half (½) of any net recovery*" by Moore from the

manufacturers and distributors of the station wagon and that Moore "*agrees* to institute and diligently and vigorously *prosecute an action against the manufacturers and distributors*" as security *for the loan.* The agreement, in paragraph 5, also provides that the "*loan need not be repaid if the action* against Subaru *is unsuccessful.*"

Order, July 24, 1987, at 2–3 (emphasis added).

■ We agree with the trial court that the purported loan-receipt agreement is not a valid loan transaction under Oklahoma law. Whether or not this "loan-receipt agreement" is a "release" or a "covenant not to sue," it is at least a "similar agreement" which is subject to set-off under section 832(H). To hold otherwise would result in circumvention of the plain reading of the state policy as mandated by Okla. Stat. tit. 12, § 832. This conclusion is consistent with the reasoning of *Pate.*

In addition to the fact that the Oklahoma statute's language regarding "similar agreements" seems clearly to apply to this case, we note that judicial interpretation of similar "settlement" agreements further support our interpretation of this agreement. The loan-receipt agreement originated as a device by which insurers loaned funds to insureds pending litigation against a wrongdoer. *See Luckenbach v. W.J. McCahan Sugar Refining Co.,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918). This type of agreement has been utilized by potential joint tort-feasors, their liability insurers, and injured parties. These agreements may be interpreted as valid loans, covenants not to sue, or releases, depending on the terms of the agreement. The issue here is whether the Oklahoma courts would treat the amount tendered as a valid loan, not subject to set-off, or as an absolute payment in the course of a settlement agreement which is subject to set-off.

The construction of a loan-receipt agreement involving co-tort-feasors and an injured party has not been directly addressed

---

**4.** Because appellant failed to include the loan-receipt agreement as a part of the designated record, or any portions of the trial transcript

making reference to the terms of the agreement, we are bound by the trial court's findings.

by the Oklahoma Supreme Court. Therefore, we look to analogous Oklahoma cases and the current status of the law in other jurisdictions with similar statutes to guide us in determining how Oklahoma courts would decide the issue of loan-receipt agreements. *See Cleere v. United Parcel Service, Inc.,* 669 P.2d 785, 788 (Okla.App. 1983) ("where Oklahoma has adopted uniform laws or laws from other jurisdictions, case law from those jurisdictions interpreting such laws are persuasive authority in our interpretation of such laws").

In *Cox v. Kelsey–Hayes Co.,* 594 P.2d 354, 357 n. 3 (Okla.1978), the court stated: "Mary Carter agreements are similar to 'loan-receipt agreements' and 'covenants not to execute.'" *Cox* was a manufacturer's products liability action wherein the agreeing defendant remained a party to the action. Although *Cox* is distinguished from the case at bar because the settling defendant here was dismissed by plaintiffs, it is still relevant that the Oklahoma Supreme Court likened loan-receipt agreements and covenants not to execute to each other.

In *Braden v. Hendricks,* 695 P.2d 1343, 1349 (Okla.1985), the court emphasized that the common-law right of indemnity and rights of contribution among joint tort-feasors were codified at Okla.Stat. tit. 12, § 832 (1981). Oklahoma prohibits a settling tort-feasor from recovering contribution from a non-settling tort-feasor. Section 832(D) states:

A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

Okla.Stat.Ann. tit. 12, § 832(D) (West 1988). In construing the present status of Oklahoma law, it is clear that the courts and legislators have prescribed rules which prevent a settling tort-feasor from realizing "windfall" profits to the detriment of the other joint tort-feasor.

In *Bolton v. Ziegler,* 111 F.Supp. 516 (N.D.Iowa 1953), the court found that construing an agreement as a loan transaction instead of a covenant not to sue would result in the non-agreeing tort-feasor contributing to or indemnifying the agreeing tort-feasor contrary to Iowa law. *See also Cullen v. Atchison, Topeka & Santa Fe R. Co.,* 211 Kan. 368, 507 P.2d 353 (Kan.1973). In *Biven v. Charlie's Hobby Shop,* 500 S.W.2d 597, 599 (Ky.1973), the court denied the effect of the loan-receipt agreement as a valid loan and held valid the terms of the release given in consideration of absolute payment. In *Alder v. Garcia,* 324 F.2d 483 (10th Cir.1963), we denied the joint tort-feasor's insurer the ability to recoup up to one-half of settlement between assignee-injured party and joint tort-feasor. This court found such payment would benefit the settling joint tort-feasor in violation of New Mexico's Contribution Among Joint Tort–Feasors Act. *Id.* at 485. The New Mexico Act, like Oklahoma, contained language prohibiting a settling tort-feasor from recovering contributions from another joint tort-feasor. *Id. See also* Okla. Stat. tit. 12, § 832(D) (West 1988).

■ The appellant's argument that defendants waived the affirmative defense of set-off is without merit. An Oklahoma court has ruled that it is the duty of the trial court judge to calculate settlement credit. *See Cleere v. United Parcel Service, Inc.,* 669 P.2d 785, 788 (Okla.App. 1983). This court has previously relied upon Oklahoma law in holding that the trial judge has the duty to deduct the amount of a prior settlement from a jury's verdict. *See Parker v. O'Rion Industries, Inc.,* 769 F.2d 647, 650 (10th Cir.1985). Appellant cited no authority to support the contention that set-off is an affirmative defense. We therefore affirm the trial court's finding on the issue of set-off.

## IV. *Inadequate Damages*

■ Appellant claims that the damages awarded are inadequate as a matter of law. Absent an award so grossly inadequate as to raise an irresistible inference that bias, prejudice, or passion invaded the trial or so

as to shock the court's conscience, a jury's determination of damages will be upheld. *Bennett v. Longacre,* 774 F.2d 1024, 1028 (10th Cir.1985); *Acree v. Minolta Corp.,* 748 F.2d 1382, 1388 (10th Cir.1984). Appellant claims there was uncontroverted evidence at trial establishing past and future medical expenses totaling $4,761,531.00. Appellant designated as part of the record a selection of four pages from the trial transcript of the testimony of an expert witness. Although these four pages do support the fact that there was testimony of past and future medical expenses in the amount claimed by appellants, appellants do not provide any evidence indicating passion or prejudice on the jury's part. *See Black v. Hieb's Enterprises, Inc.,* 805 F.2d 360, 362 (10th Cir.1986). We are satisfied the trial court's analysis was substantially correct when it wrote:

> Plaintiffs say that their uncontroverted evidence at trial established that Plaintiff Thomas A. Moore's past and future medical expenses would total in excess of $4,000,000. Thus, Plaintiffs infer that the damages verdict in the amount of $1,500,000 in favor of Thomas A. Moore failed to take account of his pain and suffering and was therefore inadequate as a matter of law. Defendant's counsel cast doubt on Plaintiffs' expert's calculation of future medical expenses through extensive cross-examination. And although Plaintiffs' evidence of Thomas A. Moore's damages was not directly controverted, it is quite possible that the jury did not find Plaintiffs' expert's testimony to be convincing. This was properly within the jury's province. Moreover, in making the argument that the damages awarded were inadequate in light of uncontroverted evidence that Plaintiff Thomas A. Moore's medical expenses will total in excess of $4,000,000, Plaintiffs ignore the jury's duty, under the instructions given, to discount to present value any award for damages. Plaintiffs have not pointed to any evidence indicating passion or prejudice on the jury's part. *See Black v. Hieb's Enterprises, Inc.,* 805 F.2d 360, 362 (10th Cir.1986). And the Court simply cannot

say that the damage award to Thomas A. Moore was so grossly inadequate as to raise an irresistable [sic] inference that bias, prejudice or passion invaded the trial, *id., citing Bennett v. Longacre,* 774 F.2d 1024, 1028 (10th Cir.1985), or so as to shock the Court's conscience. *Id. See also Acree v. Minolta Corp.,* 748 F.2d 1382, 1388 (10th Cir.1984).

Order, January 22, 1988, at 2–3.

On appeal plaintiffs point out that the allegedly uncontroverted expert testimony as to future damages was already discounted to present value when the $4,000,000 figure was calculated. However, plaintiffs fail to recognize that it is the jury's duty to judge the credibility of a witness's testimony in light of any doubts created by cross-examination. A battle between dueling experts is not necessary if sufficient lack of reliability is shown during cross-examination to justify a jury conclusion of smaller future damages. We refuse to alter a jury verdict without further proof of jury passion or prejudice. Thus, we affirm the trial court's ruling on adequacy of damages.

## V.  *Punitive Damages*

Appellant also claims that the trial court erred by failing to give a punitive damages instruction to the jury. However, the appellant failed to follow Tenth Circuit Rule of Court 28.2(e) which requires that it be stated where in the record an objection was made and ruled on. Nevertheless, the trial court appears to have addressed the issues of damages and adequacy of damages. Therefore, we will also review the merits of this contention. Based on the record before us, we are satisfied that the trial court's handling of this issue was correct.

Punitive damages are proper against the manufacturer of a product when the injury is attributable to conduct that reflects a reckless disregard for public safety. *See Thiry v. Armstrong World Indus.,* 661 P.2d 515, 518 (Okla.1983). There must be sufficient evidence presented showing the manufacturer was aware of or culpably indifferent to an unnecessary risk of injury before an instruction to the

jury on punitive damages is proper. *Id.* Evidence cited by appellant in his brief supporting the claim for a punitive jury instruction does not amount to sufficient evidence on which to predicate such an instruction. Appellant does not prove that Subaru was aware of or culpably indifferent to any safety risks created by its seat belts.

██ A lot of time and energy is spent on the argument that conduct during acrimonious discovery is evidence which would support punitive damages. In effect, appellant argues that obstructiveness in producing requested information constitutes an implied admission of punitive guilt. We are simply not persuaded by that argument in this case. The relevant evidence properly went to the jury on the liability issue. The trial court properly found that the evidence did not meet the threshold requirement for punitive damages. Again we adopt the trial court's discussion of this issue:

> With respect to Plaintiffs' contention that the Court erred in refusing to instruct on the issue of punitive damages, the Court is satisfied that there was no evidence of conduct on the part of Defendant Subaru of America which reflected a reckless disregard for public safety, i.e. evidence that Subaru was aware of or culpably indifferent to an unnecessary risk of injury from a lack of crashworthiness of the 1982 Subaru GL Station Wagon. *Thiry v. Armstrong World Industries,* 661 P.2d 515, 518 (1983). There was no evidence that Defendant or its employees possessed information indicating that the wagon posed an unnecessary risk of injury. There was no evidence of, for example, complaints concerning seat belt accessibility or the type of "failure" of the front seat claimed by Plaintiffs, or of suits in which such allegations were made. Accordingly, refusal to submit the issue of punitive damages to the jury was proper. *Id.*
>
> After the Court denied Plaintiffs' motion seeking a default judgment as a sanction for non-compliance with discovery requests and orders, Plaintiffs sought to introduce evidence of what they contend were obstructionist tactics of Defendant throughout discovery as a tacit admission of its liability. *See* Plaintiffs' Supplemental Trial Brief. The Court refused admission of this evidence. In their motion for a new trial on the issue of damages, Plaintiffs urge specifically that Subaru's refusal to produce FMVSS test documents and design and safety memoranda constituted an implied admission that their design and manufacture was defective, and unreasonably dangerous, citing *Norman v. Young,* 422 F.2d 470 (10th Cir.1970), *State of Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374–75 (10th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), and *Texaco, Inc. v. Layton,* 395 P.2d 393, 399 (Okla.1964).
>
> Even if such evidence were properly admissible, its relevance is to the issue of liability, not to damages. Plaintiff's motion for a new trial is for a new trial on the issue of damages, only, which was bifurcated from trial on the issue of liability. The evidence was properly excluded on grounds of relevance.

Order, January 22, 1988, at 3–5.

The appellant makes other general allegations in his brief as to how the trial court erred. The fact remains that Tenth Circuit Rule of Court 28.2(e) was not followed, and it is not stated where in the record an objection was made and whether it was ruled on. Furthermore, the designated record does not support the contentions that the trial court erred. Thus, we refuse to review these other general claims of error.

## VI. *Cross–Appeal*

We have reviewed the appellee's cross-appeal which is presented to us as a protective appeal. Because we have not granted the relief the appellant requested, there is no reason to address any of the issues raised on the cross-appeal.

## VII. *Conclusion*

The trial court was correct in setting off the amount received under the loan-receipt

**1454**

agreement from the jury verdict. Under the facts of this case, recognizing this agreement as a valid loan would violate Oklahoma policy which prohibits a settling tort-feasor from recovering contribution from another tort-feasor whose liability is not extinguished by the settlement. The interpretation of the language of this loan-receipt agreement includes a "release," a "covenant not to sue," and a "similar agreement" which is subject to set-off under Oklahoma law.

The very limited record designated by appellants does not support their arguments concerning damages. We are persuaded that the trial court properly resolved each of the issues on damages.

AFFIRMED.