**Ruby M. BOHANNAN, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Defendant–Appellee.**

No. 72262.

Supreme Court of Oklahoma.

July 2, 1991.

Rehearings Denied Sept. 24, 1991.

**37.** *Kennedy Wholesale v. Bd. of Equalization,* 53 Cal.3d 245, 279 Cal.Rptr. 325, 332, 806 P.2d 1360, 1367 (Cal.1991) (Mosk, J., concurring).

Rex K. Travis, Oklahoma City, for plaintiff-appellant.

Gerald E. Durbin, II, Durbin, Larimore & Bialick, Oklahoma City, for defendant-appellee.

ALMA WILSON, Justice:

The pertinent facts in this case are as follows. On April 8, 1984, in Oklahoma City, Oklahoma, a vehicle driven by James L. Grigsby, III, an Oklahoma resident, collided with a vehicle driven by Ola C. McIntosh, an Oklahoma resident. Plaintiff/Appellant, Ruby M. Bohannan, a California resident, was a passenger in McIntosh's vehicle and sustained bodily injury. The parties stipulated that the collision was entirely the fault of Grigsby and that the personal injury damages to Plaintiff equal or exceed $65,000.00. Grigsby had liability insurance coverage issued in Oklahoma by Farmers Insurance Company with $25,-000.00 policy limits. McIntosh had uninsured/underinsured motorist coverage (UM) issued in Oklahoma by State Farm Mutual Insurance Company with $10,000.00 policy limits. Plaintiff had UM coverage issued in California by Allstate Insurance Company with $30,000.00 policy limits.

Plaintiff filed suit against both drivers in state district court to recover her personal injury damages. Plaintiff also made a claim for UM benefits from her insurer. Upon denial of her UM claim, Plaintiff was permitted to add her California UM carrier, Allstate Insurance Company, an Illinois corporation, licensed to do insurance business in California and Oklahoma, as an additional party defendant. Allstate caused the action to be removed from the Oklahoma district court to the United States District Court for the Western District of Oklahoma.

After removal of the action to federal court and pursuant to agreement between Plaintiff and Allstate, Plaintiff accepted payment of $25,000.00, liability insurance limits, from Farmers and released Grigsby and $10,000.00, UM limits, from State Farm. The parties agreed that settlement would be without prejudice to Plaintiff's claim against Allstate. Upon Plaintiff's application, the two drivers, Grigsby and McIntosh, were dismissed as parties defendants by the federal district court. The parties remaining in this litigation are the injured California resident and her UM carrier, Allstate.

The threshold issue presented to the federal district court was whether Plaintiff's claim for UM benefits under her California insurance contract should be determined in accordance with Oklahoma law or California law. According to Allstate, under the

California contract *and* California law, it may subtract from its UM coverage the amount of the Oklahoma tortfeasor's liability insurance payment ($25,000.00) and the amount of the Oklahoma driver's UM payment ($10,000.00), thereby diminishing the amount of its UM liability to its first-party insured, Plaintiff, to zero (0). The parties agree that under Oklahoma law Plaintiff is entitled to recover the $30,000.00 UM policy limits from Allstate. The parties do not agree that California law permits a credit or set off for the benefits paid under Oklahoma insurance contracts.

The federal district court viewed this controversy as an interpretation of the California insurance contract issue. Applying Oklahoma's *lex loci contractus* choice of laws rule, the court ruled that the amount of Allstate's UM liability to Plaintiff is governed by California law. Accordingly, the case was dismissed without prejudice to enable the parties to bring the action in the appropriate California court. However, the litigants did not seek resolution of their controversy in the California courts. For whatever reasons, the dismissal was appealed to the Tenth Circuit.

The Tenth Circuit Court of Appeals certified the following question of law to this Court, pursuant to 20 O.S.1981, § 1601 et seq.:

> Under the circumstances of this case (all pertinent facts are detailed in the district court's order and the parties' stipulation appended hereto), involving a motor vehicle accident in Oklahoma causing injury to the passenger plaintiff, a California resident, does the law of Oklahoma or that of California determine the application and effect of the uninsured motorist provisions in plaintiff's California automobile insurance policy? Compare *Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416, 1421 (10th Cir.1985) with *Pate v. MFA Mut. Ins. Co.*, 649 P.2d 809, 812 (Okla.Ct.App.1982) (a published decision of the state court of appeals lacking precedential value pursuant to Okla.Stat. tit. 20, § 30.5).

The certified question does not require this Court to analyze and interpret provisions of the California insurance contract between the California parties. Plaintiff's California insurance contract is not a part of the record transmitted to this Court. Instead, the certified question seeks review and authoritative resolution of Oklahoma's choice of laws rule to be applied in this motor vehicle insurance contract case. That is, whether the express provisions in the insurance contract will be applied in conformity with the law of the place of contracting or the law of the forum. We answer: Under the circumstances in this case, the application and effect of the express provisions of the California UM insurance contract must conform to the public policy of the Oklahoma forum. An Oklahoma judgment which enforces a California uninsured motorist insurance contract so as to allow a set off for uninsured motorist benefits paid under an Oklahoma contract would be contrary to the public policy of this state. An express provision in the California uninsured motorist insurance contract which allows a set off for liability benefits paid under a foreign contract does not offend Oklahoma public policy and may be enforced in our courts.

## THE CONFLICTING UNINSURED/UNDERINSURED MOTORIST STATUTES OF CALIFORNIA AND OKLAHOMA

Our mobilized society and the divergent directions and purposes of the statutory and judicial developments in motor vehicle insurance law of the various states breed multistate conflict of laws issues in motor vehicle insurance or accident litigation. Comparison of the sharply opposed provisions of the California and Oklahoma UM statutes indicates the need for a choice of laws rule which will preserve the divergent public policies of the states in regulating the insurance industry. In this case, the California law allows reduction in the UM benefits for specified insurance benefits paid and prohibits stacking of UM benefits. Oklahoma law is the opposite.

California's insurance code, Ins.Code § 11580.2, subd. (p)(4), provides that the maximum liability for underinsured motor-

ist coverage for bodily injury caused by one or more insured, underinsured or uninsured motor vehicles "... shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be legally liable for the injury." And, § 11580.2, subd. (q) prohibits stacking of UM benefits, "Regardless of the number of vehicles involved ... in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons."

■ The purpose of California's UM statute is to assure that each person shall have $30,000.00 of coverage for personal injury damages caused by a financially irresponsible, tortious motorist. Thus, California allows the $30,000.00 minimum UM benefits to be reduced by the liability insurance benefits received and prohibits stacking of UM insurance provisions or contracts. This purpose is explained in *California Casualty Indemnity Exchange v. Pettis*, 239 Cal.Rptr. 205, 211, 193 Cal. App.3d 1597, 1607 (Cal.App. 3 Dist.1987) at footnote 6:

> 6. California's nonstacking rule is not simply a stingy refusal to permit insureds to obtain full recovery. It reflects a policy choice by our Legislature that, unless expressly rejected, all persons insured under a California policy should have a *minimum* level of uninsured motorist coverage. Insureds are not precluded from purchasing, and paying for, additional insurance should they choose to do so. If they do not purchase additional insurance then their premiums

will represent the reduced risk attributable to California's nonstacking rule, as in this case with the multi-vehicle discounts the defendants received when they insured more than one car. In this manner our Legislature has acted to keep down the cost of compliance with our financial responsibility law while guaranteeing that all persons will be offered the minimum appropriate level of uninsured motorist protection. The realization of this legislative purpose would be thwarted if, based upon some minimal and fortuitous contact with another state, insureds are allowed to reap an unexpected and unpaid for windfall in the level of their insurance coverage.

■ *Pettis* was a declaratory judgment action brought by the insurer to determine whether the California insurance contracts were governed by the laws of Hawaii or California. Pettis, his wife and another couple, all California residents, while vacationing in Hawaii, were involved in an automobile accident. No-fault insurance benefits were paid to the injured California residents, who then made claim for UM benefits under their California insurance contracts. Pettis contended that since the accident occurred in Hawaii he was entitled to full recovery of the personal injury damages under Hawaii law. That is, the UM coverage in his multi-vehicle policy should be stacked and the amount should not be reduced by the payments made under the Hawaii no-fault insurance. The trial court denied Pettis' stacking claim. The trial court also denied the insurer's claim to reduce Pettis' UM benefits by the amount received under the Hawaii no-fault insurance contract. The insurer did not appeal the denial of the set off.[1] *Pettis*, 239 Cal.

---

1. We determine that any credit or set off provisions in the California contract claimed by Allstate to reduce Bohannan's UM benefits by the amount received under the Oklahoma liability insurance contract are controlled by the express provisions in the contract; and that such express provisions would not contravene Oklahoma public policy. Research has not produced a case from the California appellate courts resolving an insurer's claim to reduce UM benefits by payments made under insurance contracts issued in another state. However, as in Oklahoma, California adheres to the principles

that an insurer may limit coverage in accordance with state statute, *Darrah v. California State Automobile Association, Inter-Insurance Bureau*, 259 Cal.App.2d 243, 66 Cal.Rptr. 374 (1 Dist.1968); any ambiguity in an insurance policy is to be resolved against the insurer, *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982): and that an insurer may provide coverage greater than the statutory minimum, *National Automobile and Casualty Insurance Company v. Frankel*, 203 Cal. App.3d 830, 250 Cal.Rptr. 236 (Cal.App. 2 Dist. 1988).

Rptr. at 208. The stacking issue was presented to the California appellate court. Applying the "most significant relationship" choice of laws rule, the California court determined that California law controlled and stacking of the UM coverage was denied.[2]

The Oklahoma counterpart to California's § 11580.2, 36 O.S.1981, § 3636, provides that "... uninsured motor vehicle coverage shall include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the persons making such claim, *regardless of the amount of coverage of either of the parties in relation to each other ..."* and that *any payment made by the insured tortfeasor shall not reduce or be a credit against the total liability limits* as provided in the insured's own uninsured motorist coverage.

■ The purpose of 36 O.S.1981, § 3636[3] is to assure each person the full contracted coverage for personal injury damages caused by a financially irresponsible, tortious motorist for each premium paid. This purpose is explained in *Keel v. MFA Insurance Company,* 553 P.2d 153, 155–156 (Okla.1976):

> The statute grants the victim prima facie recourse to any and all policies available, subject to the implicit condition that his claims in aggregate not exceed his damages. The legislature must have been cognizant that a person often becomes an insured, either named or otherwise included in more than one automobile liability policy. ...

The legislature could have limited protection to the minimum statutory limit had that been its intent, or could have restricted coverage to only one policy. ...

... By imposition of both policies, the insured is not receiving a windfall. He has paid the insurer a premium for this protection, and is only attempting to recover the actual amount of his damages which are within the limits of both policies. On the other hand, the insurer has collected a premium for each policy. ...

This Court has consistently protected the strength of our UM statute and the rights of an insured granted thereunder and purchased. *Biggs v. State Farm Mutual Automobile Insurance Company,* 569 P.2d 430 (Okla.1977); *Porter v. MFA Mutual Insurance Company,* 643 P.2d 302 (Okla.1982); *Lake v. Wright,* 657 P.2d 643 (Okla.1982); *Chambers v. Walker,* 653 P.2d 931 (Okla.1982); *Uptegraft v. Home Insurance Company,* 662 P.2d 681 (Okla.1983); *Heavner v. Farmers Insurance Company,* 663 P.2d 730 (Okla.1983); *State Farm Mutual Automobile Insurance Company v. Wendt,* 708 P.2d 581 (Okla.1985). This protection, however, does not reach all motor vehicle insurance contract coverage of all persons using the roadways of Oklahoma. *Moser v. Liberty Mutual Insurance Co.,* 731 P.2d 406 (Okla.1986).

■ In this case, Ola McIntosh, an Oklahoma resident and driver of the automobile

---

**2.** In *Hefner v. Farmers Insurance Exchange,* 211 Cal.App.3d 1527, 260 Cal.Rptr. 221 (Cal.App. 5 Dist.1989), stacking under a multi-vehicle policy was not the issue, rather the issue was whether an injured passenger may recover under her UM policy with higher limits, even though the driver's UM policy covered the passenger. The court held that California's antistacking law did not prohibit an injured passenger from receiving benefits under the driver's UM policy ($50,-000.00 paid) and benefits under the passenger's UM policy which had a $100,000.00 limit, stating that Hefner would reasonably expect that the amount of her UM coverage would be available to her in the event of an accident.

**3.** We determine that 36 O.S.1981, § 3636, requiring full UM coverage for each premium paid, controls the application and effect of any credit or set off provisions in the California contract which may reduce Bohannan's UM benefits by the amount received under the Oklahoma UM insurance contract. Section 3636(E) was amended in Okla.Sess.Laws 1989, ch. 98, § 1, allowing an UM carrier to pay its insured an amount of a tentative tort settlement. And, § 3636 was amended in Okla.Sess.Laws 1990, ch. 297, § 4, adding three new subsections relating to the right of rejection and the manner in which UM coverage may be rejected. These amendments do not disturb the stacking of UM coverage without regard to the place of issuance of the UM contract; nor the prohibition against reduction of Oklahoma UM coverage because of any payment made by the insured tortfeasor.

in which Plaintiff was a passenger at the time of the accident, contracted for UM coverage under Oklahoma law. Plaintiff, even though a resident of California, received first-party UM benefits as an insured under McIntosh's Oklahoma insurance contract. The premium for UM coverage paid by McIntosh was determined in accordance with the stacking laws of Oklahoma. Application of California's non-stacking or set off law to the provisions of the California contract to reduce the UM coverage by the Oklahoma UM coverage denies Plaintiff the realization of the benefits as an insured under McIntosh's Oklahoma UM insurance contract for which the premium was paid and it allows the California insurer an unexpected windfall. Such application would offend the legislative policy expressed in § 3636. Thus, any provision in the California UM contract which prohibits stacking of Oklahoma UM coverage with the California coverage or which allows Oklahoma UM benefits to be a credit or set off against the UM benefits under the California contract violates Oklahoma public policy and is unenforceable in an Oklahoma forum.

■ On the other hand, James Grigsby contracted for liability coverage as mandated under Oklahoma's financial responsibility law, §§ 7–201, et seq., and compulsory liability insurance laws, §§ 7–600, et seq., of Title 47. The legislative purpose of these statutes is to protect the public by requiring Grigsby, or any other owner of a motor vehicle in this state, to maintain a minimum of $10,000.00 insurance coverage against loss from liability imposed by law for damages arising out of the use of his vehicle. These statutes do not prohibit a credit or set off against other coverage for the liability benefits paid. And, as stated earlier, the prohibition against a liability benefits credit or set off in § 3636 is a limitation on insurance contracts issued in this state. Oklahoma public policy would not be offended by an express bargain contracted in California that liability benefits will be a credit or set off against California UM coverage. The freedom-of-contract principles control as to the application and effect of any liability insurance payments

credit or set off provisions in the California UM contract. *Equity Mutual Insurance Company v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947 (Okla.1987). Thus, any provision in the California UM contract which expressly requires a reduction in the coverage for benefits paid pursuant to a foreign liability insurance contract does not violate Oklahoma public policy and is enforceable in an Oklahoma forum.

## THE CHOICE OF LAWS RULE

■ This jurisdiction's established general choice of laws rule in contract actions is that the nature, validity and interpretation of a contract is governed by the law where the contract is made. *Telex Corp. v. Hamilton*, 576 P.2d 767, 768 (Okla.1978); *Clark v. First National Bank of Marseilles, Ill.*, 59 Okl. 2, 157 P. 96 (1916). Rigid application of this choice of laws rule could require the enforcement of the California statutory policy vis-a-vis the California UM insurance contract herein. The Tenth Circuit directs our attention to the opinions in *Pate v. MFA Mutual Insurance Company*, 649 P.2d 809 (Okla.App.1982) and *Rhody v. State Farm Mutual Insurance Company*, 771 F.2d 1416 (10th Cir.1985). In *Pate*, the state Court of Appeals invoked the public policy exception to the *lex loci contractus* rule, while in *Rhody* the Tenth Circuit adhered to the *lex loci contractus* rule, rejecting the most significant relationship rule. We would not disturb the application of the choice of laws rule in either of these cases.

In *Pate*, the state Court of Appeals determined Oklahoma law controlled the application and effect of the set off or credit provisions against medical payments in an Arkansas contract. The choice of laws issue in *Pate* turned on 36 O.S.1981, § 6092, which the Oklahoma Legislature expressly declared to be applicable to all insurance contracts effective in Oklahoma. In *Rhody*, the Court of Appeals for the Tenth Circuit determined the Texas nonstacking of UM contracts law applicable to Texas insurance contracts even though the insured resided in Oklahoma and the accident

occurred in Oklahoma. *Rhody* did not involve an Oklahoma statute wherein the Legislature expressly reached all insurance contracts effective within the state, without regard to the extra-jurisdictional issuance of the insurance contract. Nor did *Rhody* involve the application or effect of a set off or credit as between UM contracts issued in different states, as in the case at bar.

The facts in *Pate* are that Pate was a resident of Arkansas with an automobile policy which he purchased in Arkansas. Pate, his wife and daughter were involved in an automobile accident in Oklahoma. The other driver was at fault. Pate's wife and daughter subsequently died from the injuries sustained in the accident, however, medical expenses were incurred in Oklahoma for all three members of the Pate family. Pate entered into a complete settlement with the tortfeasor's liability carrier and then filed suit against his insurance company to recover the first-party medical payments under his Arkansas insurance. Pate's insurer asserted that the Arkansas law and the Arkansas insurance contract provided for reimbursement to the insurer of medical payments from any money collected in recovery or settlement with the tortfeasor. Pate asserted that the reimbursement provision was contrary to 36 O.S.1981, § 6092.

In *Pate*, the Court of Appeals decided that the provisions in the Arkansas motor vehicle insurance contract requiring the credit or set off against medical payments were contrary to the public policy of Oklahoma. Quoting Restatement (Second) of Conflict of Laws § 6 (1971) and the Comment on Subsection (1) [of § 6], the Court of Appeals concluded that § 6092 applied to all insurance contracts without regard to the place of issuance.

Facially, 36 O.S.1981, § 6092 imposes requirements on *all* insurance contracts *effective* in this state, as the Court of Appeals concluded. The legislative dictate of § 6092 is that first-party medical payments coverage shall not be reduced or diminished by benefits paid under a motor vehicle liability contract. Section 6092 establishes a

*lex loci solutionis* rule for determination of any conflict of laws issue as to medical payments provisions in an insurance contract. In *Pate*, as the forum state, Oklahoma had an interest in providing full medical payments protection to those injured upon its highways, allowing less protection to nonresidents would be obnoxious to Oklahoma's public policy, and such a result is not required by the full faith and credit clause of the Constitution of the United States. *Nevada v. Hall*, 440 U.S. 410, 99 S.CT. 1182, 59 L.Ed.2d 416, (1979) reh.den. 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389. The result in *Pate* is correct, however, we reject any reasoning in *Pate* which is inconsistent with this opinion.

On the other hand, *Rhody* involved opposing UM stacking laws. The facts in *Rhody* were that the Rhodys' son was fatally injured in an automobile accident in Oklahoma caused by an uninsured motorist. The Rhodys were Texas residents. The son worked and resided in Oklahoma. The Rhodys' motor vehicle insurance was issued in Texas. The Rhodys insured three vehicles, one of which was used by the son in Oklahoma. That vehicle was involved in the accident. The Rhodys had purchased it in Oklahoma; title was held in the mother's name; and the only insurance contract listing that vehicle was the Rhodys' Texas insurance. The Rhodys made a claim for UM coverage in an amount equal to the coverage for three vehicles. The Texas insurer did not deny UM liability, but disputed the right of the Rhodys to stack the UM coverage. Contrary to Oklahoma law, Texas law prohibits stacking of UM under a multi-vehicle insurance contract. The Tenth Circuit resolved the conflict of laws issue pursuant to the *lex loci contractus* rule of Oklahoma, the forum state. The Tenth Circuit determined that the stacking issue was governed by Texas law and denied the stacking claim.

Notwithstanding the relationship of the Rhodys' son to Oklahoma, the *lex loci contractus* rule sufficiently served the interests of the parties and the public policies of the states in *Rhody*. The involved insurance contracts were purchased by the Rhodys in Texas, presumably at the premium

rates set in accordance with Texas law. The application of Texas law did not deny UM insurance benefits contracted and paid for pursuant to Oklahoma law.

While Allstate relies on *Rhody*, Plaintiff asserts that the *lex loci contractus* choice of laws rule is outmoded and should be replaced by the most significant relationship choice of law rule in tort actions. In support of this contention Plaintiff cites *Brickner v. Gooden*, 525 P.2d 632 (Okla. 1974) and *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039, 1046–1047 (Okla.App. 1980). The reasons stated in *Brickner* for abandoning and rejecting the *lex loci delictus* rule in tort law are equally compelling for abandoning and rejecting the *lex loci contractus* rule in contract law. In *Collins Radio*, the Court of Appeals followed the most significant relationship test in a case involving the sale of goods under Article 2 of the Uniform Commercial Code. However, the U.C.C. supports the most significant relationship test as applied in *Collins Radio*, while the statutory source of the *lex loci contractus* and the *lex loci solutionis* rules remain a part of our law in ordinary contract cases. Title 15 O.S.1981, § 162, states:

"A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law of the place it was made."

The confines of ordinary contract law has accommodated the several states in the area of motor vehicle insurance litigation, even though it is acknowledged that contracts of insurance on motor vehicles are in a class by themselves since every insurer knows the automobile is a movable item which will be driven from state to state. *Allstate Insurance Company v. Hague*, 289 N.W.2d 43, 50 (Minn.1978). However, neither the *lex loci contractus* rule, nor the *lex loci solutionis* rule allows full consideration of the statutes and public policies of the several states in motor vehicle insurance disputes. Competing statutes of the states involved in a single controversy merit analysis, as in *Pate*, where the legislative policy of Oklahoma specifically applied to all first-party medical payments insurance contracts effective in this state, or as in the instant case, where specific provisions of an insurance contract are sought to be applied in derogation of Oklahoma's stacking law.

The applicable choice of laws rules in The Restatement (Second) Conflicts of Laws are at §§ 6, 188 and 193.[4] The Restate-

---

4. The Restatement (Second) Conflict of Laws § 6 states:

(1) A court, subject to constitutional restrictions, will follow a *statutory directive of its own state* on choice of law.

(2) *When there is no such directive, the factors relevant* to the choice of the applicable rule of law *include*

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of law,

  (f) certainty, predictability and uniformity of result, and

  (g) ease in the determination and application of the established choice of law rule for the more modern "significant relationship" test. [Emphasis added.]

The Restatement (Second) Conflict of Laws § 188 states:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has *the most significant relationship to the transaction and the parties under the principles stated in § 6.*

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account applying the principles of § 6 to determine the law applicable to an issue include:

  (a) the place of contracting,

  (b) the place of negotiation of the contract,

  (c) the place of performance,

  (d) the location of the subject matter of the contract, and

  (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203. [Emphasis added.]

ment in § 6 does not mention the place of contracting or the place of performance, although it does specify consideration of the public policies and interests of the competing jurisdictions. Section 188 in subsection 1 gives preference to § 6 principles. And, § 193, the apparent applicable Restatement rule in this case, gives greatest weight to the location of the automobile. The Comment to § 193 advises that the location of the risk will be given greater weight than any other single contact in determining the state of applicable law. The location of the insured risk, in the case of automobile insurance, is the place where the automobile will be garaged most of the insured period.

Application of the Restatement rules would have likely allowed the Rhody's to stack their multi-vehicle policy limits even though they purchased the insurance coverage under Texas' non-stacking law; and, possibly denied Pate the protection of Oklahoma's statutory policy regarding medical payments. In first-party UM coverage, location of the insured automobile does not attain greatest significance. The place of performance and the place of contracting are of greatest significance in this contract area pervaded by state statutes.[5]

■ Analyzing significant relationship factors, the United States Supreme Court in the case of *Allstate Insurance Company v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) found no constitutional impediment to the application of the fo-

rum's UM insurance "stacking" law by the State of Minnesota instead of the opposing law of Wisconsin, the place where the insurance contract was issued. The Court ruled that neither the full faith and credit clause, nor the Fourteenth Amendment's due process clause limits a state's application of its own law to litigation having multistate aspects. Thus, the courts in Oklahoma may balance and analyze the interests in multistate controversies in deciding the law to be applied, particularly in cases where the extra-jurisdictional law or its effect is contrary to our public policies.

Several states have reviewed and re-examined the choice of laws rule applicable to motor vehicle insurance contract controversies. The majority of those states continue to apply the *lex loci contractus* rule, with and without modification, rather than a "significant relationship" test. *See, Gravley v. Nationwide Mutual Insurance Company*, 553 So.2d 52 (Ala.1989) (state where insurance contract was made and maintained absent contrary provision in contract will determine whether North Carolina or South Carolina law governs UM policy), *Cotton v. State Farm Mutual Automobile Insurance Company*, 540 So.2d 1387 (Ala.1989) (UM policy issued in Tennessee to Alabama resident governed by Tennessee law which prohibits stacking), *Lumbermens Mutual Casualty Co. v. August*, 530 So.2d 293 (Fla.1988) (rights and obligations of parties to insurance contract are determined by the contract and under *lex loci contractus* rule statute of

The Restatement (Second) Conflict of Laws § 193, "Contracts of Fire, Surety or Casualty Insurance", states:
The *validity of a contract of* fire, surety or *casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk* during the term of the policy, *unless* with respect to a particular issue, some other state has *a more significant relationship under the principles stated in § 6* to the transaction and the parties, in which event the local law of the other state will be applied. [Emphasis added.]

**5.** This Court is receptive to the Restatement's most significant relationship test in an *ex contractu* action. *Dean Whitter Reynolds, Inc. v. Shear*, 796 P.2d 296 (Okla.1990). In *Dean Whitter* this Court said that the customer-defendant "... could have, but did not, call for a judicial

analysis of any of the facts supportive of a choice-of-law challenge under the Restatement (Second) Conflict of Laws § 187 ..." and that the choice of New York law in a securities customer agreement *might* have been avoided if its application were contrary to the fundamental law of Oklahoma. In footnote 13 in *Dean Whitter*, the Court noted the absence of any proof of the facts whereby Oklahoma's relationship is more significant to the transaction and the parties. *Id.*, p. 299. In this certified question proceeding, no proof has been tendered to support a determination that Oklahoma has the most significant relationship to the transaction and the parties. As stated later, the most significant relationship test should be available where the facts demonstrate that the *lex loci contractus* rule is insufficient to protect the fundamental law of the forum and the rights of the parties.

limitations governed by Massachusetts law), *Sturiano v. Brooks*, 523 So.2d 1126 (Fla.1988), (*lex loci contractus* rule required imposition of New York interspousal immunity because, in essence, the laws of the jurisdiction where the contract is made are incorporated by reference into the agreement), *Aetna Casualty & Surety Company v. Souras*, 78 Md.App. 71, 552 A.2d 908 (1989) (set off of amount of liability insurance benefits paid against UM recovery governed by law of state where policy issued), *Lee v. Saliga*, 373 S.E.2d 345 (W.Va.1988), and, for earlier cases, 20 A.L.R.4th 738, "Automobile Insurance—Conflict of Laws."

The Restatement rules do not give paramount recognition to the statutory directives regarding uninsured/underinsured motorist insurance coverage. Thus, we must remain aligned with those states that continue to follow the *lex loci contractus* rule. However, the *lex loci contractus* rule must allow consideration of the public policy of the forum and interests of the conflicting states. Therefore, we adopt the following choice of laws rule to be applied in motor vehicle insurance cases involving conflicting state laws: The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

Allstate seeks the benefit of California public policy in this Oklahoma action arising out of an Oklahoma accident. Allstate could have sought relief from the UM claim of its California insured under her California insurance contract in a California forum. Oklahoma courts interpret or apply insurance contract provisions consistent with Oklahoma public policy. Whether liability benefits paid under a foreign insurance contract must be a set off against California UM insurance coverage is not settled in California. Oklahoma courts do not pronounce the public policy of a sister state. Accordingly, because Bohannan is an insured under an Oklahoma policy, her sister's, the $10,000 UM cover-

age in that insurance policy cannot be set off against Bohannan's $30,000 California coverage. Such a set off would defeat the public policy of Oklahoma as stated in 36 O.S.1981, § 3636. On the other hand, the $25,000.00 liability coverage of Grigsby may be set off against Bohannan's California coverage, if the California UM contract specifically provides for a reduction in the coverage by an amount of benefits paid under a liability insurance contract issued under the laws of another state. No public policy of Oklahoma would be violated by such a set off.

CERTIFIED QUESTION ANSWERED.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, DOOLIN and KAUGER, JJ., concur.

SIMMS, J., concurs in result as to Grigsby and dissents as to Bohannan.

SUMMERS, J., concurs in part and dissents in part.

HARGRAVE, J., dissents.